MICHAEL HARTING

*v.*

GEORGE W. JOCKERS *et al.*

*Filed at Springfield March 30, 1891.*

1. FRAUDULENT CONVEYANCE—*transfer for grantor's use—as, for his future support.* The general rule of law is, that a voluntary conveyance or transfer of property by a debtor, as against existing creditors, is fraudulent and void. A debtor may not, by gift or other voluntary transfer of his property to others, or by transfer and conveyance of it for his own use, as, for his future support, hinder or delay his creditors in the collection of their just demands.

2. An agreement for the future support of the grantor is a valuable consideration, but being in effect a transfer of property to the use of the grantor, such a consideration will be insufficient to uphold the conveyance, when to do so will operate to the prejudice of existing creditors.

3. In such case it is wholly immaterial that no actual fraud is shown to have been intended, for the result would be the same,—that is, to give to the debtor the beneficial enjoyment of that which rightfully belongs to the creditor; and the transaction is therefore wanting in the good faith necessary to the validity of the contract. If the act done

will necessarily have the effect of hindering and delaying creditors, the law will presume that it was done with a fraudulent purpose and intent.

4. The mere fact of indebtedness, however, will not amount to a prohibition of the debtor's power to make a gift, or to provide for his future support, or the support of others. If the debtor retains property amply sufficient for the payment of all his debts, he has a right to contract for his support for a longer or shorter period, as he may think best.

5. So if one finding himself aged, and possibly decrepit, seeks, by contract for his future support, to secure the necessaries and comforts which his declining years and strength demand, he may lawfully use his property for such purpose, and his transfer for that purpose will be upheld, unless the natural consequence of the act is to hinder, delay or defraud his creditors. If he retain sufficient property within his control to satisfy all just obligations, no one is injured, and his creditors, as before the transfer, may satisfy their claims by enforcing the same against his property.

6. In all such cases, the voluntary conveyance or provision for future support must be such as a prudent and just man would make, having due regard to his financial condition and circumstances, and retaining ample property to meet, without hazard, every just obligation. When this is done there is no intent to injure or delay creditors, and no presumption of fraud can arise.

7. It is not necessary that actual insolvency of the debtor shall be proved in order to avoid an alleged fraudulent conveyance, but it will be sufficient to avoid the conveyance or transfer if there be not ample property retained, or if the withdrawal of the amount used by the debtor in making provision for his future support will materially lessen his ability to pay his debts. The burden of proof will be upon the party asserting the validity of the transfer to overcome the presumption arising therefrom, and rebut the presumption of fraud.

8. SAME—*subsequent impairment of the reserved fund or securities.* Where a debtor, at the time of making a provision for his future support, retains in his hands what is then amply sufficient to pay his debts, in the shape of notes on solvent parties, the subsequent insolvency of the makers of the notes will not necessarily render the provision in favor of the debtor fraudulent as to creditors.

9. SAME—*settlement by a debtor upon a wife or child.* A debtor may lawfully make a reasonable advancement to or provision for the benefit of a wife or child when such advancement or provision will not endanger or interfere with his solvency, or does not tend directly to hinder or delay existing creditors in the collection of their claims.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Jersey county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. JOSEPH S. CARR, for the appellant:

A debtor can not, as against his creditors, transfer all his property to another to secure his future support, and such a conveyance is fraudulent in law as to creditors, though valid between the parties thereto. *Annis* v. *Bonar*, 86 Ill. 128; *Moore* v. *Wood*, 100 id. 450; 1 Smith's Lead. Cas. 33; *Troyne's case*, 3 Coke, 80.

When the question is, Was there a trust created by a contract for the benefit of the grantor, and did that contract result in hindering and delaying creditors, and those facts are in any way admitted, the fraud is an inference of the law, which the court is bound to pronounce, and it is not important what motives may have animated the parties. *Moore* v. *Wood*, 100 Ill. 455; *Phelps* v. *Curts*, 80 id. 112; *Emerson* v. *Bemis*, 69 id. 541.

These rules apply to personal property with the same force as to the fraudulent conveyance of lands. *Troyne's case*, 3 Coke, 80; *Moore* v. *Wood*, 100 Ill. 454.

Messrs. WISE & DAVIS, for the appellees:

Complainant has failed to prove his bill by a preponderance of the evidence. Fraud must be alleged and proved, and in order to set aside a contract as fraudulent, it must appear that it was the intent of both grantor and grantee to commit the fraud against the creditors of the vendor or grantor. *Ewing* v. *Runkle*, 20 Ill. 448; *Myers* v. *Kinzie*, 26 id. 26; *Schroeder* v. *Walsh*, 120 id. 412.

Fraud must be clearly established, and will never be presumed when the transaction can be fairly reconciled with honesty. *Dempsey* v. *Bowen*, 25 Ill. App. 192.

In determining whether the contract between Jockers and Heuster was fraudulent in law, the court will ascertain the intention and financial condition of Heuster at the time the contract was made. Subsequent changes in his financial condition can have no bearing or effect upon it.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is a bill in equity, by appellant, to set aside as fraudulent a contract between Jacob Heuster, Sr., and appellee Jockers, by which Jockers received from Heuster $2000, and in consideration thereof agreed, in building his house, to so enlarge it as to furnish a separate room for Heuster, and to support and maintain him during his life.

It appears that Heuster was, in September, 1884, about eighty-one years old, a widower, and without a home. He was possessed of $2000 in money, personal property to the value of $400, a note of $100, and three other promissory notes of $600 each, executed by George Egelhoff and his sons, under the firm name of Egelhoff Bros. In September, 1884, Jockers applied to Heuster for the loan of $2000. Heuster asked his purpose in borrowing the money, and upon being told by Jockers that he desired to use it in building a house on his farm, proposed to Jockers that if he would build the house larger, so that he (Heuster) could have a room in it of his own, and Jockers would board him, do his washing, etc., and take care of him while he lived, he would pay him the $2000 which Jockers desired to borrow. To this Jockers consented, and the parties entered into an agreement to this effect. It also appears that Jockers changed the plan of his proposed building at largely increased expense, and provided the room for Heuster as stipulated. A note was taken for the $2000, signed by Jockers and payable to Heuster, which, upon the house being completed, and Heuster taking possession of his room therein in December, 1884, was surrendered to Jockers

by Heuster, and destroyed. Heuster died in April, 1885. The making of this agreement, the payment by Heuster to Jockers thereunder, and that Jockers in good faith kept and performed the agreement on his part, are not questioned. It also appears that on June 17, 1875, said Heuster, Sr., made and delivered to Jacob Heuster, Jr., a promissory note for $440, payable in one year after date, bearing ten per cent interest, which, before its maturity, was sold and delivered to appellant. This note, at the time of the transaction before spoken of, had been past due for eight or nine years, and there is no evidence of any attempt on the part of the appellant or others to enforce its payment. After the death of Heuster, Sr., the note was presented against his estate, and was allowed March 11, 1886, being principal and interest at that date, $1133. The estate being insolvent, this bill was filed to charge Jockers with the money received from Heuster, or sufficient of it to pay this claim.

It is apparent that at the time of the transaction with Jockers, by which $2000 of Heuster's effects went into Jockers' hands for Heuster's future support, appellant was the creditor of Heuster to the amount of about $1000. The evidence leaves no doubt that as between the parties the transfer of the money to Jockers was upon a good and sufficient consideration, which was subsequently fully performed by Jockers. The general rule of law, however, is well settled, that a voluntary conveyance or transfer of property by a debtor, as against existing creditors, is fraudulent and void. A debtor may not, by gift or other voluntary transfer of his property to others, or by transfer and conveyance of it for his own use, as, for his future support, hinder or delay his creditors in the collection of their just demands. An agreement for future support is a valuable consideration, but being in effect a transfer of property to the use of the grantor, it will be insufficient to uphold the conveyance, when to do so will operate to the prejudice of existing creditors. It is wholly immaterial that no actual fraud is shown

to have been intended, for the result would be the same,—that is, to give the debtor the beneficial enjoyment of that which rightfully belongs to the creditor; and the transaction is therefore wanting in the good faith necessary to the validity of the contract. If the act done will necessarily have the effect of hindering and delaying creditors, the law presumes that it was done with that fraudulent purpose and intent. *Moore* v. *Wood et al.* 100 Ill. 451; *Emerson* v. *Bemis,* 69 id. 537; *Larkin* v. *Aird,* 6 Wall. 78; Bump on Fraudulent Con. 246-282.

The fact that appellee may have paid a portion of the consideration for the surrender of his note by Heuster, in placing himself in a worse position by the expenditure of $1000 more money in building a larger house for the accommodation of Heuster than he would otherwise have done, can be of no avail, for "when it is shown that the present consideration is inadequate to satisfy his debts, whatever may be the amount secured to the debtor, the law, instead of entering upon the task of determining what part of the consideration is money or other property and what part is to be paid as future support of the grantor, and holding the grantee responsible to the creditors for the latter sum, treats the conveyance as a nullity as between the grantee and the creditors, and holds the property liable for their claims." (Bump on Fraudulent Con. 246; *Sidensparker* v. *Sidensparker,* 52 Me. 481, and cases *supra.*) The law, however, admits of qualifications as against existing creditors, when, as said by Mr. Justice STORY, "the circumstances of the indebtment and conveyance repel any presumable imputation of fraud." (1 Story's Eq. Jur. sec. 355.) And it has been repeatedly held, and is well settled, that the mere fact of indebtedness will not amount to a prohibition of the debtor's power to make a gift, or provide for his future support or the support of others. If the debtor retains property amply sufficient for the payment of all his debts, he has a right to contract for his support for a longer or shorter period, as he may think best. *Hapgood* v. *Fisher,* 34 Me. 407; *Wooten*

v. *Clark*, 23 id. 75; *Parker* v. *Nichols*, 7 Pick. 52; Bump on Fraudulent Con. 247; *Annis* v. *Bonar*, 86 Ill. 128.

It not infrequently happens that one slightly indebted is called upon to discharge the imperfect obligations owing from parent to child, to make reasonable advancements to his children. And so also one engaged in active business may regard it as a duty, and justly so, to his wife and children, or others dependent on him for support, to set apart for their use, by conveyance or otherwise, a reasonable portion of his estate, and thereby keep them secure from the evil effects of the reverses of fortune. Where this is done without endangering or interfering with his solvency, or does not tend directly to hinder or delay existing creditors in the collection of their claims, the gift will ordinarily be upheld, as, if one making such advancement or provision should retain in his possession ample property, free from incumbrances and accessible to his creditors, sufficient to satisfy and liquidate all just demands against him. So if one finding himself aged, and possibly decrepit, seeks, by contract for his future support, to secure the necessaries and comforts which his declining years and strength demand, he may lawfully use his property for such purposes, and his transfer for that purpose will be upheld, unless the natural consequence of the act is to hinder, delay or defraud his creditors. If, upon making provision, he retains sufficient property within his control to satisfy all just obligations, no one is injured, and his creditors may, as before the transfer, satisfy their claims by enforcing the same against his property. In all such cases the voluntary conveyance or provision for future support must be such as a prudent and just man would make, having due regard to his financial condition and circumstances, and retaining ample property to meet, without hazard, every just obligation. Where this is done there is no intent to injure or delay creditors, and no presumption of fraud can arise. It is not necessary that actual insolvency should be proved. It will be sufficient to avoid the conveyance or transfer if there

be not ample property retained, or if the withdrawal of the amount used by the debtor in making such provision for his future support will materially lessen his ability to pay his debts.

As before said, Heuster retained in his possession and control, substantially $400 worth of personal property and the Egelhoff notes. The case was made to turn in the Appellate Court, and, as we apprehend, in the circuit court, upon the solvency or insolvency of the makers of the Egelhoff notes at the time of the transaction with Jockers. It is not shown or pretended that Heuster was in debt to any person other than the appellant, or that there were other claims or liens against him. The Egelhoff notes were given for money loaned, and were renewed some months after the transaction with Jockers, without additional security. It would seem clear that Heuster at least regarded the Egelhoffs as solvent. It must be apparent that if, at the time of the transfer to Jockers, Heuster held the obligation of solvent persons to the amount here named, he did retain ample means within his own control, entirely accessible to the creditors, to meet and discharge his indebtedness. The circuit and Appellate Courts, upon consideration of the evidence, have found that the Egelhoffs were solvent, and that no presumption of fraud, or intent to hinder or delay creditors, can be inferred from the transfer by Heuster to Jockers. We have carefully considered the evidence, and while the burden is upon appellee to overcome the presumption arising from the conveyance or transfer of property to him, for the use and benefit of Heuster, by showing circumstances which rebut the presumption of fraud, we are not prepared to say that the lower courts have erred in their finding. It seems that the trial judge heard the testimony of the witnesses, and was therefore better able to determine than we are as to whom credit should be given. It is true, that during the following year the Egelhoffs became insolvent, and the debt to Heuster was wholly lost. The subsequent result is

competent to be considered, but only as tending to illustrate the condition of affairs at the time of the transaction complained of, and upon consideration of all the facts proved we are not prepared to say that the circuit court was not justified in holding that Heuster, in making the transfer in his then condition and circumstances, retained ample property for the payment of his debts, so that the presumption of fraud arising from the transfer of his property for his own use and future means of support was overcome and rebutted. While the evidence is not as satisfactory as we might wish, it establishes clearly that Heuster might well rely on the Egelhoff indebtedness as being ample and sufficient to satisfy and discharge all existing claims against him, and while it is ordinarily true that the question of whether sufficient has been retained may be determined by the result, where there is diligent pursuit of legal remedies following shortly after the transfer which is alleged to be fraudulent, it only becomes competent to show such result as tending, as before said, to determine the state and condition of the debtor's estate at the time of the alleged fraudulent transfer of his property. And where, as here, the creditor makes no effort to collect his debt, and it is shown, by the preponderance of the evidence, that the Egelhoffs became insolvent after the transfer to Jockers, such subsequent insolvency can not be considered as affecting the fairness of the transfer sought to be set aside.

If Heuster, being indebted to the amount of $1000, had transferred to Jockers the Egelhoff notes, and had placed the $2000 in money openly to his own credit in some solvent bank, where it could be readily reached by his creditors, could any legitimate inference arise that by the transfer to Jockers, for his future support, Heuster intended to hinder or delay the collection of his debts? Manifestly not. A sum double the amount of all his indebtedness would, with the prudence and foresight of prudent business men, have been placed in a recognized safe depository and within easy access by creditors;

and although the bank should subsequently became insolvent, and be unable to pay when the creditor might seek to collect his debt, that fact could in no way impeach the *bona fides* of the original transaction.

No good purpose will be served by the discussion of the evidence. It is sufficient that we have given it careful attention, and concur with the Appellate and circuit courts in their findings in respect of the facts.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*