## ROVELSTED v. NELSON et al.

(District Court, E. D. Illinois.  May 8, 1926.)

1. Contracts ⬡⟞28(3)—Evidence merely of promise and extension held insufficient to show contract to pay debt of another in consideration of extension.

Evidence simply of statement of debtor's wife to creditor that she would pay the debt, with the fact that some time afterwards extension was given to the husband, *held* insufficient to show contract to pay debt in consideration of extension.

2. Bankruptcy ⬡⟞184(2)—Assignment of distributive share in executor's hands, not filed as required by statute to defeat garnishment, is invalid against assignor's trustee (Hurd's Rev. St. Ill. 1921, c. 62, § 1).

An instrument considered as an assignment of a distributive share in the hands of the executor, not having been filed as required by Hurd's Rev. St. Ill. 1921, c. 62, § 1, to defeat garnishment, is invalid against assignor's trustee in bankruptcy, who under Bankr. Act, § 70e (Comp. St. § 9654), may assert the rights of a creditor or garnishment creditor.

3. Wills ⬡⟞743—Instrument held assignment of distributive share in executor's hands, which, not having been filed, does not defeat garnishment (Hurd's Rev. St. Ill. 1921, c. 62, § 1).

Instrument whereby legatee directs executor to pay to himself, from her share of moneys thereafter to be collected, balance owing on her husband's contract, and declaring that it shall be his receipt, *held* an assignment of a distributive share, which, not being filed, by provision of Hurd's Rev. St. Ill. 1921, c. 62, § 1, does not defeat garnishment.

4. Bankruptcy ⬡⟞161(2)—Payment under executory assignment of moneys to be collected, not being made till within four months of assignor's adjudication in bankruptcy, was voidable preference.

Instrument whereby legatee directed executor to pay himself, from her share of moneys thereafter to be collected, balance owing on her husband's contract, evidencing an executory arrangement which was not completed till within four months prior to her being adjudicated bankrupt, when the executor knew such application would be a voidable preference, payment thereunder was void.

5. Fraudulent conveyances ⬡⟞74(3)—Voluntary conveyance by one insolvent or not retaining enough to pay debts is void as transfer to hinder, delay, and defraud creditors.

Voluntary conveyance by one who is insolvent, or who does not retain a reasonably sufficient amount to pay her debts, to pay the debt of her husband, is void as a transfer to hinder, delay, and defraud creditors, without further proof of fraudulent intent.

In Equity.  Suit by L. M. Rovelsted, trustee in bankruptcy of Bessie Nelson, against Bessie Nelson and others.  Decree for complainant.

Clark & Noel, of Rantoul, Ill., and Green & Palmer, George Martin, and Oris Barth, all of Urbana, Ill., for complainant.

Dobbins & Dobbins, of Champaign, Ill., for defendants.

LINDLEY, District Judge.  Bessie Nelson was adjudicated bankrupt in this court on August 18, 1923.  Her trustee brings suit to recover her distributive interest in the estate of Alexander F. Staubus, her father, who died testate on February 23, 1911.  One of the defendants, Thomas Jervis, qualified as executor of said will, and proceeded upon the execution of his trust, which has not yet been closed.  Staubus left certain farm lands in Ford county, a certain tract of real estate in Rantoul, and some personal property.  Under the will, Bessie Nelson inherited a one-sixth interest in all of said property, which by the terms of the will was to be sold by the executor, who was charged with the duty of distributing the proceeds to the devisees and legatees.  The house and lot in Rantoul belonging to said estate was sold upon a conditional contract by the executor to defendant Elmer P. Nelson, husband of Bessie Nelson, on August 23, 1920, under which title was reserved by the executor until the entire purchase price should be paid.  Time for performance of this contract was from time to time extended by written agreement between Jervis and Elmer Nelson, the last extension having been made upon February 19, 1923, as follows:

"The within contract is hereby extended by mutual agreement between the parties hereto to March 1, 1924, except that all payments mentioned in the within contract are hereby canceled and annulled, and it is mutually agreed that the parties of the second part shall pay on all deferred payments at 7 per cent. per annum and pay all taxes assessed in the year 1923.  It is agreed that whenever the farm land belonging to the Staubus estate is sold this contract shall automatically become due and payable on the date of the settlement for said farm land.

"Dated this nineteenth day of February, A. D. 1923.

"[Signed] T. E. Jervis.        [Seal.]
        "Elmer P. Nelson.    [Seal.]"

The farm land was sold by the executor on April 16, 1923 for $23,800.  Ten per cent. of the purchase price was paid at said time; the remainder of $21,420 not being paid until the purchaser had examined the abstract and approved the title, according to the executor's account on June 12, 1923.  Prior to said time, the executor had on hand

funds in which the distributive interest of Bessie Nelson was less than $500.

On April 17, 1923, Bessie Nelson delivered to the executor the following instrument:

"To Thomas E. Jervis, Executor of the Estate of Alexander F. Staubus, Deceased: You are hereby directed to deduct from my share of the moneys coming from the sale of the real estate of Alexander F. Staubus, deceased, the balance due and owing upon the contract signed by Elmer P. Nelson for the purchase of the west 108 feet of lot 9 in block 5 of John Penfield's addition to the original town of Rantoul, also the balance due and owing upon a note signed by myself and Elmer P. Nelson, payable to you as executor, and this shall be your receipt therefor.

"Dated at Rantoul, Illinois, this 17th day of April, A. D. 1923.

"[Signed]                    Bessie Nelson.

"Accepted this 17th day of April, A. D. 1923.           Thomas E. Jervis, Executor."

The amount then due from Elmer Nelson for the house and lot contracted to be purchased by him from the executor was $3,701.55. In a later account, the executor charged himself with said amount received from said Bessie Nelson as of April 17th and credited himself with the same amount paid to her; the same being charged against her distributive interest. The defendants contend that the effective date of this transaction was April 17th, and that the instrument that day executed was an effective completion of the transaction, so far as the rights of Bessie Nelson and her creditors are concerned, notwithstanding the fact that the executor had on hand at said time less than $500 belonging to Bessie Nelson and did not receive the balance of the funds to which he was entitled until June 12th following.

On April 18, 1923, Enos Phillips (for the use of the First National Bank) procured judgment in the circuit court of Champaign county against Bessie Nelson for $1,122.50 and Thomas Ogden for $2,709.74. Executions were returned, no property found, and garnishment suits were begun against the said executor; the writs being served on April 20, 1923. These judgments were based upon notes which had been in existence by way of renewal from time to time for a number of years. Upon these notes Bessie Nelson was liable as surety. In February, 1922, Mr. Jervis, the executor, learned of one of these notes and the amount thereof. On April 16, 1923, he knew what Elmer P. Nelson was in a bad financial condition, and that

12 F.(2d)—39

Bessie Nelson had no visible property other than her interest in the estate. Prior to said date he had carried his executor's account in the First National Bank of Rantoul, the then holders of one of said notes upon which judgment was taken. Thereafter the funds from the farm land were deposited in another bank. He testified that he had learned of the indebtedness and feared entanglements and therefore made the change. He knew that Elmer P. Nelson did not, on April 17th, have anything to pay for the house and lot. He learned of the Ogden note on April 16th or 17th. He knew that there would not be enough money from the land to pay the First National Bank, Ogden, and the executor.

The defendants claim that upon April 17, 1923, Bessie Nelson was a debtor of the estate, that at the time of the last extension of the contract of purchase executed by her husband, Elmer P. Nelson, she had by parol promise agreed, in consideration of the extension, to pay the balance of the purchase price.

The plaintiff sues, alleging that the payment to the executor was in effect a transfer of so much of her assets to her husband without consideration, and therefore in fraud of her creditors, she not being a debtor of the executor; that, if the court should find that she was a debtor of the executor, then the payment made by her was not consummated until June 12th, and having been made within four months prior to the adjudication in bankruptcy, to the executor, at a time when he had reasonable cause to believe that the payment amounted to a voidable preference. The defendants contend that Mrs. Nelson was a debtor of the executor after her alleged parol agreement; that the payment was consummated on April 17, 1923, more than four months prior to the filing of the petition in bankruptcy, and cannot therefore be reached as a preference; that, if the court shall find that Bessie Nelson was not such a debtor, there is nothing to bind the executor, because the transfer was in fact to her husband, and, so far as the executor is concerned, he was merely a third party accepting a payment of Elmer Nelson's debt in good faith, as he had a right and a duty so to do.

[1] The facts hereinbefore stated are clearly substantiated in the record; in fact there is no serious dispute about them. The only serious question of mixed fact and law is whether or not Bessie Nelson was a debtor of the executor on April 17, 1923, when she executed the document upon which defendants

rely. All other issues are essentially questions of law.

The evidence upon the alleged liability of Bessie Nelson as a debtor of the executor is found in the testimony of the latter and herself. The former testified that, prior to the last extension to Elmer Nelson, to which Bessie Nelson was not a party, he talked with her, and that she said that she wanted to get the farm sold so that they could apply it upon the contract, and expected to pay the debt out of the proceeds of the sale; and that she would pay it when the farm was sold. She testified that she told him to apply her part of the estate upon the property. This was all of the evidence upon which the defendants relied to create a contract of liability against Bessie Nelson, except the circumstance that, shortly after the conversation, the last extension was made to Elmer Nelson.

The court is of the opinion that this evidence cannot be construed as creating a liability. It will be noticed that there was no testimony that in consideration of the extension she would pay the debt or that she ever promised she would pay the debt, if an extension were made. Rather, if she made any promise at all, she made an independent parol promise, apparently without any consideration, that she would pay this debt. A promise to pay in consideration of an extension by the creditor to the principal debtor is like every other promise. There must be a meeting of the minds of the parties. The executor made no promise to Bessie to extend. He had a conversation with her in which she said that she would pay the debt. There is no competent evidence to show that he promised that he would give the extension in consideration of her promise. As said in Edgerton v. Weaver, 105 Ill. 43:

"Where forbearance is relied on as the consideration of a promise, the proof must show more than that it was followed by forbearance. It must appear, *not only that the promise was made for the purpose of obtaining time,* and that time was actually *given, but also that the indulgence thus accorded was in pursuance of the request implied by the promise.*"

The court believes that the circumstances and facts in this case do not warrant any indulgence of an inference that there was in fact a bona fide contract made and entered into between Bessie Nelson and the executor.

[2] However, the court is of the further opinion that it is immaterial whether Bessie Nelson was a debtor or not. If it should be assumed that Bessie Nelson did, at the time of the last extension, enter into a valid contract to pay this debt of her husband, so that on April 16, 1923, she was a debtor of the executor, the question immediately arises as to the validity of the transaction on April 17th, considered from the point of view of a preference attacked by a trustee in bankruptcy. As we have stated, at that time the executor knew of the other debts of Bessie Nelson. He knew of no other property belonging to her except this distributive interest in her father's estate, which he knew was not sufficient to pay all her debts. He therefore had reasonable cause at said time to believe that the payment to him would be a preference voidable under the Bankruptcy Act (Comp. St. § 9585 et seq.). In this situation, if Bessie Nelson had paid the executor on April 17th, even though it amounted to a preference, the trustee could not attack the same, as that date was more than four months prior to the filing of the petition in bankruptcy. So from this view of the case it is necessary to determine whether the payment was completed on April 17th or upon a later date. On April 17th the executor had in his hands less than $500 belonging to Bessie Nelson. He took from her what the plaintiff calls an assignment of her distributive interest in the sale price of the farm lands, which had not yet been paid. This same document the defendants call a receipt. If it be an assignment, it is not valid as against the trustee in bankruptcy, for the reason that under chapter 62, § 1, of the Illinois Revised Statutes, no assignment, transfer, or other disposition by an heir, legatee, or devisee of his distributive share in the hands of an executor shall operate to defeat the garnishment of the same, unless the said assignment, transfer, or other disposition is reduced to writing and filed in the office of the county court before the service of process in the garnishment proceedings. The document here relied upon was never so filed, and was therefore void if considered an assignment, transfer, or other disposition of Bessie Nelson's distributive interest. Staaland v. Thompson, 122 Ill. App. 109. The trustee in bankruptcy under section 70e, Bankr. Act (Comp. St. § 9654), may assert the rights of a creditor or garnishment creditor. In re Rodgers, 125 F. 169, at 180, 60 C. C. A. 567; Bank v. Millbourne Co., 172 F. 177, at 178, 96 C. C. A. 629, 30 L. R. A. (N. S.) 552.

[3, 4] The defendants contend, however,

that the document relied upon was not an assignment, but was a receipt. It was a direction to the executor to pay to himself, from her share of the moneys thereafter to be collected, the balance due and owing upon her husband's contract, and was a receipt for the same. The money was not collected by the executor until almost two months thereafter. It would seem to the court that this document comes within the terms of the Illinois statute, "assignment, transfer or other disposition," of her distributive interest. It may not have used the words "assigned" or "transferred," but it was in its essence a transfer of her distributive interest in the moneys coming to the executor when they should be received, to the executor. The document is a receipt, but it is also an order to deduct from the future moneys coming to the executor the said amount. It was as if she had given a check to a bank to pay a note held by that bank at a time when she had an insufficient deposit to pay the same, to be paid out of funds thereafter to be collected by the bank and deposited to her credit; the check containing an indorsement that its payment should be a receipt for her share of the funds thereafter to be deposited. This, in its essence, is an assignment, a receipt, order, and a transfer all combined. In the opinion of the court, it should have been filed with the county court. More than that, it evidences an executory arrangement which was not completed until June 12th, at a time when the executor knew that the deduction of the funds in accordance with the order and the application of the same upon the debt would be a voidable preference. From this view of the case, the payment is void, and the executor is liable to pay the same to the trustee in bankruptcy.

Neither the executor, nor the estate he represents, can be injured by such result, for he has never delivered the deed to Nelson, and may (under its terms) forfeit the contract for the purchase of the property for default and retain and resell the same for the benefit of the estate.

[5] However, if, as the court believes, Bessie Nelson was not in fact a debtor of the executor on April 17th as surety for the debt of her husband, or as primary contractor, the situation of defendant is not helped, for in such case the transfer of her distributive interest to the executor for the benefit of her husband, without any consideration, is void as a transfer to hinder, delay, and defraud creditors. There may have been no actual fraud upon the executor's part,

or upon Bessie Nelson's part, but the executor knew that the payment was for the benefit of Elmer P. Nelson, her husband, and that there was no other consideration for the same. He was bound to know that such voluntary conveyances are void. There are no facts creating an estoppel against a demand upon him at this time, for as we have pointed out, he still has the legal title to the property for which he was paid. He cannot be heard to say that he participated in a voluntary transfer from wife to husband which he knew would hinder and delay the other creditors, but is in no way liable merely because the payment was made to him instead of to the husband. Voluntary conveyances by insolvent debtors are subject to be set aside without any further proof of fraudulent intent. Harting v. Jockers, 136 Ill. 627, 27 N. E. 188, 29 Am. St. Rep. 341; Smith v. Patton, 194 Ill. 638, 62 N. E. 794. It is not necessary to show even actual insolvency if a debtor does not retain a reasonably sufficient amount of property to pay all of his creditors (Harting v. Jockers, 136 Ill. 627, 27 N. E. 188, 29 Am. St. Rep. 341), and a grantee who has notice of the grantor's fraudulent intent to defeat the claims of creditors by making a conveyance is to be regarded as participating in the fraud, even though he might have paid some consideration for the conveyance (Clark v. Harper, 215 Ill. 24, 74 N. E. 61). The executor has paid nothing. He has in effect given a receipt to Bessie Nelson for the purchase price of the property bought by her husband, but his deed to the husband has never been delivered. The husband and his trustee in bankruptcy are before the court. The contract of purchase may be forfeited, upon the finding of this court that the payment was voidable. The executor knew of the other debts. He knew of no other property that Bessie Nelson had. He accepted all of her property to pay her husband's debt when he knew there was no consideration for her action, other than a voidable promise upon her part. He is charged with knowledge of the fraudulent intent that the law infers in such case.

The authorities cited by counsel for defendants, that it is the duty of an executor without any assignment to deduct from the amount coming to a distributee any amount due the estate, do not apply to the facts here. There will be a decree finding the payment of $3,701.50 to Jervis, June 12, 1923, void, and ordering the same repaid to the trustee, together with interest thereon at the

rate of 5 per cent. per annum from that date, and the costs of this suit. The executor may amend his account in the probate court and protect himself by a resale of the property forfeited by Nelson.