E. W. Brady, Appellee, v. E. B. Marshall, Appellee.
Brady's Stamp Shop, Inc., Appellant.

Gen. No. 40,608.

Opinion filed November 27, 1939.   Rehearing denied December 11, 1939.

HARRY C. DIAMOND, of Chicago, for appellant; ALFRED DIAMOND and MEYER SHAPIRO, both of Chicago, of counsel.

RANDOLPH BOHRER, of Chicago, for appellee; MILTON J. FINK, of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by intervenor, Brady's Stamp Shop, Inc., a corporation, and defendant E. B. Marshall from judgments entered in the municipal court of Chicago on October 3, 1938. On June 15, 1938, E. W. Brady, plaintiff, entered a confession of judgment against Marshall in the municipal court of Chicago for $7,720, based upon a promissory note for $7,500, dated February 24, 1938, and executed and delivered to Brady on that date. August 4, thereafter, the judgment was opened up on petition of defendant Marshall. On August 26, plaintiff amended his statement of claim, setting up a fraudulent transfer of goods as ground for an attachment. The writ of attachment in aid issued and was levied on "five sealed and bound packages containing books of stamps." The defendant Marshall traversed the grounds alleged for attachment. Plaintiff Brady answered the intervening petition, denying that the intervenor was the owner of the stamps. The issues between plaintiff and defendant as to the attachment and between the intervening corporation and the plaintiff as to the ownership of the stamps came on for hearing before Judge Schiller. The trial was by the court. Evidence was taken; the attachment was sustained. There was a finding that the corporation intervenor was not the owner of the stamps levied on, and judgment accordingly was entered on October 3, 1938. From these judgments Brady's Stamp Shop, Inc., and defendant, E. B. Marshall, appeal.

Manifestly, two distinct issues are presented by this appeal, any one of which is controlling. First, as between Brady and Marshall, whether the evidence justified a finding that there was fraud giving grounds to sustain the attachment, and secondly, as between the intervenor corporation and plaintiff, whether the intervenor was the owner of the property levied on. An understanding of these issues requires a summary of material facts concerning which there is no dispute. Prior to February 24, 1938, plaintiff Brady conducted a business at 111 West Jackson boulevard in Chicago known as Brady's Stamp Shop. He was the owner and the business was that of buying and selling stamps. Marshall had been interested in an investment security business conducted at 29 South LaSalle street. He became interested in the stamp business through suggestions of B. F. Enelow, who was a dealer in stamps, and recommended to Marshall the purchase of Brady's shop. After talks over the telephone Brady and Marshall met at Marshall's office, and their negotiations resulted in the sale to Marshall of the Brady business and stock of goods at the price of $10,000. On that date a "bill of sale," so called, was executed. It acknowledged the receipt of $2,500 of the purchase price in cash and a judgment note for $7,500, payable on or before one year from date with interest at 5½ per cent. The writing recites that the sale included the stock on hand and good will. It also provides that Marshall shall employ Brady as his assistant in the business at a salary of $200 per month beginning March 1, 1938. By the writing Marshall warranted that when the business would pay operating expenses, including a salary of $200 per month to Brady and interest, he (Marshall) would in addition to the salary pay Brady a percentage of the net profits, such as they might agree upon. Brady promised not to engage in business as a stamp dealer within 50 miles of the city of Chicago for a period of five years and agreed he

would not manage any such business in that territory where his name would be identified with it.

On March 4, 1938, a charter for the incorporation of Brady's Stamp Shop, Inc., was issued. The charter provided that the office should be at 111 West Jackson boulevard, where the business of Brady was formerly conducted. The capital stock was $4,000. Brady was the registered agent for the corporation; Marshall was its president. The charter was recorded in Cook county on March 19, 1938. While no formal bill of sale of the business was, so far as the evidence shows, given to the corporation, it seems to have taken possession of the business and property. The first check for Brady's salary was drawn by him on the corporation and was paid to him from its funds. Brady was the manager of the corporation and testified that he personally had the word "Inc." added to the sign on the door indicating that the business there was conducted in the name of the corporation. This sign was placed there on March 4, 1938, and remained until September 1, 1938. Brady continued to draw a salary from the corporation up to June 15, 1938, when his employment ceased and this suit was begun.

The evidence shows without contradiction that this practical transfer of the assets of the stamp business purchased by Marshall from Brady to the new corporation was made without any attempt to comply with the provisions of the Bulk Sales Act (Smith-Hurd's Ann. Stats. ch. 121½, sec. 78 [Jones Ill. Stats. Ann. 121.01]; Laws of 1913, p. 258, sec. 1) and the trial judge seems to have been of the opinion that this failure to comply with the statute was alone sufficient grounds for sustaining the charges of fraud upon which the attachment was issued. Failure to comply with the Bulk Sales Law is constructive fraud, but constructive fraud alone is not sufficient basis upon which to issue an attachment writ under the attachment statute. We understand it to be so held in the cases of *Weare Commission Co. v. Dru-*

*ley,* 156 Ill. 25, affirming 54 Ill. App. 391; *United Paper & Trading Co., Inc. v. Allen,* 222 Ill. App. 261; and *C. & E. Marshall Co. v. Leon,* 267 Ill. App. 242. While this is true, we do not doubt that failure to comply with the act together with proof of other circumstances tending to disclose an actual intention to defraud will justify the issuance of an attachment writ, and the plaintiff strenuously contends there is such proof in the record. In support of this contention it is pointed out that defendant Marshall filed an affidavit of merits to the suit brought on the note making charges which he afterward failed to sustain. The court, however, excluded evidence offered in defendant's behalf which, if true, would have gone far to negative any actual intention to defraud the plaintiff. The trial court seems to have been of the opinion that oral evidence of conversations between Brady and Marshall, both before and after the execution of the bill of sale, with reference to the possibility of the organization of a corporation which would take over the business, was inadmissible upon the theory that these would violate the rule that oral evidence varying the terms of a contract reduced to writing is inadmissible. The record shows that upon the direct examination of defendant Marshall he was asked what conversation he had with Brady about incorporating the Brady Stamp Shop, Inc. Attorney for plaintiff objected on the ground "that nothing can be stated here in variance of a written contract . . . between Brady and Marshall. . . ." Plaintiff's attorney further said it was immaterial because assuming such a conversation "it does not take it out of the provisions of the Bulk Sales Act." In response to questions by the court, attorney for defendant said he was trying to prove that Marshall told Brady he was going to incorporate the corporation using Brady's name, and that Brady said, "All right"; that Marshall told Brady he was going to be the general manager of the corporation; that they would open

up a bank account, and that Brady would work for the company at $200 per month; that this was done and that Brady continued to work under these conditions. It was argued that under such an arrangement with knowledge by Brady of the incorporation and transfer of the property to the corporation, an estoppel was created and against Brady, and that he could not under such circumstances take advantage of the noncompliance by Marshall with the Bulk Sales Act. The court stated he would have to sustain the objection, and attorney for Marshall then made this offer: "We offer to prove by this witness that he told the plaintiff in this case before the 24th of February, 1938, and after that date that there would be a corporation organized known as the Brady Stamp Shop, Inc., for the benefit of the same stockholders who were in the Kelly Foreman Co., which company the witness told Brady he was liquidating and had purchased the stamps with the money, proceeds thereof, and that this company, this Brady Stamp Shop Inc., upon starting business would employ the plaintiff as general manager, and that all the stamps on hand at that time would be transferred over to this new corporation, the Brady Stamp Shop Inc., and stock of that company would be issued for those stamps to the stockholders of the former Kelly Foreman Co. that was being liquidated, and that that was accordingly done and the corporation organized on the 4th of March, stock issued to the same stockholders who had stock in the liquidated company, and all of the stamps on hand at that time were transferred over to the new corporation, for which this stock was given in payment, and that the plaintiff agreed that that should be done, and that the plaintiff in this case agreed to that arrangement and started working for his new company, the Brady Stamp Shop Inc., as general manager and continued so, as the evidence shows, until the middle of June,

1938." This offer of proof was objected to, and plaintiff made a motion to strike it which was sustained. The court remarked: ". . . Here is a statute that requires certain things to be done, and until those things are done that cannot be waived by any act on his part, except where reduced to writing and acknowledged by him in substitution of the legal requirements. . . ."

As a matter of fact, the court upon the trial of the issue as to the ownership of the stamps levied on seems to have been under the impression that this also could not be established by oral evidence and excluded evidence tending to show that Marshall had borrowed money from a stockholder with which to purchase a collection of stamps for the business after the intervenor corporation took it over. It is clear that the court erred in these rulings. The corporation was not a party to the bill of sale, and it was not binding upon it. The agreement, if there was an agreement, that the business should be turned over to a corporation to be brought into existence was collateral and in no way tended to vary the terms of the written agreement between Brady and Marshall. Moreover, the conversations which it was desired to put into evidence for the most part took place after the execution and delivery of the bill of sale. The parol evidence rule was therefore not at all applicable. In *Mulvey Mfg. Co. v. McKinney,* 184 Ill. App. 476, at page 483, this court through Judge BAKER said with reference to evidence of this kind: "No rule is better settled than that parol testimony cannot be received to vary, contradict, add to or take from the terms of a valid written instrument. But this rule is not violated by allowing testimony of a distinct, valid, collateral, contemporaneous or antecedent agreement between the parties which was not reduced to writing, where the same is not in conflict with the terms of the written instrument. In discuss-

ing this rule, Taylor in his treatise on the Law of Evidence says, section 1038:

" 'The rule dóes not prevent parties to a written instrument from proving that either contemporaneously or as a preliminary measure they had entered into a distinct oral agreement on some collateral matter. Still less, as will presently be shown, does the rule exclude evidence of an oral agreement which constitutes a condition on which the performance of the written agreement is to depend.'

"The same author says, sections 1049–1157:

" 'It is almost superfluous to observe that the rule is not infringed by proof of any collateral parol agreement which does not interfere with the terms of the written contract, though it may relate to the same subject matter.' "

The opinion cites Greenleaf, sec. 284a; *Lindley v. Lacy,* 17 C. B. (N. S.) 578, 112 E. C. L. 578; *Welz v. Rhodius,* 87 Ind. 1, where both the English and American authorities are cited.

It is clear that in excluding this evidence there was error for which the judgments must be reversed. In the absence of this evidence we will not pass on the question of whether it was sufficient to create an estoppel, although it would seem on principle plaintiff would be estopped to complain that notice was not given under the Bulk Sales Act, if he in fact participated in and took the benefits of a transaction with full knowledge that such notice was not given. So far as the evidence discloses he was the only creditor. For the error indicated the judgments are reversed and the causes remanded.

*Reversed and remanded.*

O'CONNOR and McSURELY, JJ., concur.