## LANDERS FRARY & CLARK v. VISCHER PRODUCTS CO. et al.

### No. 10697.

United States Court of Appeals
Seventh Circuit.

Jan. 22, 1953.

Walter Hamilton, Chicago, Ill., for appellants.

Francis L. Daily, Chicago, Ill., Robert McClory, Waukegan, Ill., Henry Ebner, Chicago, Ill., Daily, Dines, Ross & O'Keefe, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Defendants appeal from a judgment in a declaratory judgment action in which also supplemental coercive relief by way of injunction was prayed. The court adjudged plaintiff to be a creditor of Vischer Products Company, an Illinois corporation, in the sum of $56,250, found that a transfer of the tangible assets of the mentioned corporation to Vischer Products Company, (Inc.) a Delaware corporation, and an assignment of the intangible assets to the stockholders of the former corporation were in fraud of the corporate creditors and that the property transferred was, in equity, held in trust for the benefit of the creditors of the assignor corporation, including plaintiff. The trial court's opinion, in which are embraced its findings of fact and conclusions of law, appears in 104 F. Supp. 411. In view of the full statement of facts therein contained, we shall avoid unnecessary repetition.

The amended complaint sought a declaratory judgment that plaintiff was a creditor of the original company to which there remained owing a balance of $56,250 due on or before July 16, 1953; that all of the tangible assets had been transferred to the Delaware company and all the intangible assets to the assignor's stockholders; that these transfers violated the Bulk Sales Act of Illinois, Section 78 of Chapter 121½, Ill.Rev.Stats., and were in fraud of plaintiff's rights as a creditor under Illinois law and, therefore, void. Both the Delaware company and the stockholders were joined as defendants.

The court found that it had jurisdiction of the parties and of the subject matter; that plaintiff was a creditor of the defendants as alleged; that the transfers of the assets of the original corporation were for an inadequate consideration and in fraud of plaintiff's rights as a creditor; that the property transferred and the income therefrom were impressed with an equitable lien in favor of plaintiff in the amount of $56,250 and ordered that defendants be enjoined from transferring any of the assets assigned to them until that lien should be satisfied in full.

Speaking briefly, the defendants contend here that, though they do not dispute that $56,250 is owing to plaintiff and will be due on July 16, 1953, the court had no right to entertain the suit before that date; that the amount involved does not exceed $3,000; that no actual controversy existed at the time this suit was begun; that plaintiff, not being armed with a judgment and execution thereon returned *nulla bona*, may not maintain the suit; that there was no violation of the Bulk Sales Act of Illinois and no transfer in fraud of creditors; that plaintiff consented and waived any objection to the transfers and that the court erroneously impounded the assets.

There is no denial that the assigning corporation owed plaintiff the sum of $56,250 due on or before July 16, 1953. The chief question presented is whether plaintiff might invoke the jurisdiction of the court to protect its undisputed debt not yet due and have a judgment declaring the transfers fraudulent and void, either on general

equitable principles or because of violation of the Bulk Sales Act of Illinois. This important question was decided against the contentions of defendants, who now seek to reverse the judgment. Various incidental questions are involved.

First of all, we face the question of whether plaintiff might join in its action a prayer for declaratory judgment and a prayer for coercive relief by way of injunction. The practice in England and in America is to combine a request for a declaration with a request for an injunction or other coercive relief. Declaratory Judgments, Borchard, p. 170. Consequential or executory relief may be demanded either in association with or as a supplement to declaratory relief. Idem, p. 172. Federal Civil Procedure Rule 57, 28 U.S.C.A., provides that "The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar. As amended Dec. 29, 1948, effective Oct. 20, 1949." "Written instruments, including ordinances and statutes, may be construed before or after breach at the petition of a properly interested party, * * *." Notes of Advisory Committee on Rules, p. 246, Title 28 U.S.C.A. It seems clear that declaratory judgment actions may include prayers for coercive relief.

Closely allied to the foregoing issue is the contention that no justiciable controversy existed. It appears that, after the transfers had been made, on October 3, 1947, plaintiff's attorneys addressed a letter to counsel for the Illinois corporation inquiring as to payment of the indebtedness. The lawyers replied October 3, 1947 that the indebtedness would be paid only when due. Still later, on June 28, 1950, plaintiff reopened the question and on July 19, 1950, Vischer Products Company again wrote that the matter would be discussed only when due.

Nothing transpired thereafter until the beginning of the suit, October 10, 1950. The issues were sharply joined by the complaint and the answers, presenting a clearly defined and sharply contested controversy as to whether the transfers made by Illinois corporation were fraudulent and void and whether plaintiff had consented thereto. We think there can be no question but that a justiciable controversy existed.

Defendants insist that the suit could not be maintained by plaintiff as it had not first obtained a judgment upon its indebtedness and had execution returned *nulla bona*. Even before promulgation of Rule 18(b), the federal courts in enforcing a cause of action created by state statute, were not confined to the practice provided for the state courts but followed their own procedure. Thus, in Braun v. American Laundry Mach. Co., D.C., 56 F.2d 197, at page 199 the court said: " * * * the Bulk Sales Act conferred on plaintiff a substantive right in kind identical with the ancient right of a creditor to attack a transfer made with intent to hinder, delay, or defraud creditors, and * * * gave a procedural remedy which dispensed with conditions precedent such as were theretofore operative in suits under the Act and traditionally in force in suits to set aside transfers in fraud of creditors. The substantive equitable right thus created may be enforced in a federal court; the procedure in that court sitting in equity will, however, be governed, not by the remedial provisions of the state statute, but solely by the general principles of equity procedure as applied in the federal courts." The court proceeded: " * * * a creditor may maintain a bill to set aside a fraudulent conveyance in a federal court only if he has previously exhausted his remedy at law, ordinarily by judgment and return of execution *nulla bona* or if the debtor waives the judgment and return and admits the debt."

However, by Rule 18(b) the federal procedure was changed. As the court said in Armour & Co. of Delaware v. B. F. Bailey, Inc., 5 Cir., 132 F.2d 386, 387, "Prior to the adoption of the rules of civil procedure, a creditor could not maintain an action to set aside a fraudulent conveyance in the federal court until he had reduced

his claim to judgment. This rule was abrogated by Rule 18(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that claims previously cognizable only after another claim had been prosecuted to a conclusion may be joined together in a single action. By its express terms this rule contemplates a joinder of the action to set aside the conveyance with the action to establish the claim, the former being ancillary to and dependent upon the latter, and the debtor being an indispensable party." The Advisory Committee on the Rules commented: "This rule is inserted to make it clear that in a single action a party should be accorded all the relief to which he is entitled regardless of whether it is legal or equitable or both." It is clear from the rule, as interpreted by the courts, that one seeking to set aside a fraudulent conveyance may prosecute his claim for judgment simultaneously with his suit to set aside the conveyance and need not first reduce the claim to judgment. Thus it is clear that, under the federal rules of procedure, the action to set aside fraudulent transfers may be maintained simultaneously with the action for declaratory judgment.

■ Nor can we assent to the postulate that the fact that the debt owing plaintiff had not yet ripened into maturity prevented maintenance of the action. In United States v. Goldblatt Bros., 7 Cir., 128 F.2d 576, 579, an action prosecuted under the Bulk Sales Act of Illinois, we said: "The word creditor used in the statute has a broad meaning—sufficiently broad to include creditors of every class without limitations, Winthrop, etc., Co. v. Kournetas, 265 Ill.App. 535, 538, 539. It is not restricted to those creditors whose claims, at the time of the sale, were liquidated as to the amount. The statute makes this clear by providing for the listing of 'the amounts owing to each (creditor) as near as may be ascertained.' * * * Nor is the word 'creditor' limited in the statute to those whose claims are presently due and owing. If such were the case, a merchandise creditor would not be a bulk vendor's creditor, within the meaning of the Act, unless the bill was due at or before the date of sale. It is significant that the statute contains

only the word 'owing.' That word was not used in the limited sense of a liability that has become due and payable; it was to cover a liability in contra-distinction to a contingent claim which depended upon the occurrence of another event before liability was established."

But, say defendants, this was not a proper case for application of the Bulk Sales Act of Illinois. That statute, Section 78, Chapter 121½, Ill.Rev.Stats., applies to all kinds of businesses and declares fraudulent and void the sales, transfers or assignments of the major part of or the whole of the stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the regular and usual prosecution of the vendor's business. The original statute, which governed only retailers, was held unconstitutional, Charles J. Off & Co. v. Morehead, 235 Ill. 40, 85 N.E. 264, 20 L.R.A.,N.S., 167, for the reason that it constituted class legislation, inasmuch as it eliminated bulk sales other than those of retail dealers. The present act, however, is broader; it was held constitutional in G. S. Johnson Co. v. Beloosky, 263 Ill. 363, 105 N.E. 287. It is not limited to bulk sales of those engaged in selling merchandise, commodities and other wares, as was the original act. Thus in LaSalle Opera House Co. v. LaSalle Amusement Co., 289 Ill. 194, 124 N.E. 454, the Illinois Supreme Court held that the Act was violated where an opera company sold its assets without complying with the Act. The transfer there included the lease, furniture and fixtures, good will, trademark and trade names. The broad character of the Act was mentioned in Coon v. Doss, 361 Ill. 515, 198 N.E. 341, 102 A.L.R. 561, and its application to businesses other than that of a retail dealer expressly approved in St. Paul-Mercury Indemnity Co. v. Hoey, 325 Ill.App. 693, 60 N.E.2d 641 and Brady v. Marshall, 302 Ill.App. 151, 23 N.E.2d 764.

■ We have no doubt that the transfer of all its assets tangible and intangible by the Illinois corporation to the new corporation and to its stockholders came within the direct provisions of the Illinois Bulk Sales Act. Plaintiff states in its brief that the assets transferred included "$118,000 of

tangible assets" all of which were conveyed to the Delaware corporation. In addition all the patent rights upon which royalties were being collected were transferred to the stockholders without consideration other than the surrender of their stock in the old corporation.

 .The court found rightfully also, we think, that the transfers were void in equity under the Illinois authorities, irrespective of the Illinois Bulk Sales Act. The District Court commented at some length on this and reached, we think, the right conclusion. In Illinois, a corporation has no right to give away its property leaving its creditors unpaid. Consequently any transfer of its assets not made in the usual course of business and for an adequate consideration will be set aside and the lien of the creditors enforced in equity. Bouton v. Smith, 113 Ill. 481. The test in determining the validity of a voluntary conveyance such as we have here as against creditors is whether or not it directly threatens to or does impair or endanger the rights of creditors, Birney v. Solomon, 348 Ill. 410, 181 N.E. 318, for, as the court said there, a debtor must be just before he is generous and though a donor may make a conveyance with the most upright of intentions, yet, if the transfer hinders, delays or defrauds his creditors it may be set aside as fraudulent. The intent or motive is immaterial; if the transfer directly tends to or does impair the rights of creditors, it is fraudulent in law irrespective of intent. Second Nat. Bank of Robinson v. Jones, 309 Ill.App. 358, 33 N.E.2d 732; Marmon v. Harwood, 124 Ill. 104, 16 N.E. 236; McKey v. McCoid, 298 Ill. 566, 132 N.E. 233. We conclude that the court rightfully held that the property transferred, under the circumstances found to exist here, was fraudulently conveyed and became impressed with a trust in favor of creditors of the original corporation, including the plaintiff.

 Defendants argue that plaintiff consented to these transfers. It relies upon a letter from the assigning corporation to Richard White, President of plaintiff, in which the Vischer Products Company said that it might desire a clarification agreement. White's response, in which defendants find consolation, merely said that he would do anything "reasonable." This exchange of letters betokens no consent on the part of plaintiff to a sale or transfer of the assets of the corporation. Plaintiff relies in this connection also upon the fact that an amendment to a license contract between plaintiff and the Vischer Company granted plaintiff some additional licensing rights. However, plaintiff never sold or manufactured any of the licensed articles and cancelled the license in 1947. The correspondence is wholly without support of any intention to release the company of any of its obligations.

 Defendants insist here for the first time that they were wrongfully deprived of a jury trial. The Declaratory Judgment Act expressly provides for a jury trial; but in this case no demand was made. The defendants answered and, by failure to ask for a jury trial, consented to a trial by the court. Their present contention on appeal comes too late.

 We think there is no merit to defendants' argument that the amount in controversy did not exceed $3,000. That which was at stake was the safety of the debt of $56,250. It was this property right which the plaintiff sought to protect. Plaintiff attempted by its suit to remove any threat to the collection of this debt. The value in controversy, we think, is the value of that which it was sought to have protected, namely, the debt of $56,250. See Davis v. American, etc., 7 Cir., 94 F. 2d 441, 115 A.L.R. 1486 and cases there cited. Boesenberg v. Chicago Title & Trust Co., 7 Cir., 128 F.2d 245, 141 A.L.R. 565.

We conclude that the District Court had jurisdiction of the cause and the parties; that it had the right to entertain the suit for a declaratory judgment and the supplemental coercive relief prayed; that the transfers in question were void under the general equity jurisprudence of Illinois as well as under the Bulk Sales Act of that state; that, under the federal civil rules of procedure, plaintiff was entitled to proceed without a judgment and execution previously obtained; that the relief was properly granted and that the judgment must be and is hereby affirmed.