**In re GILL—OWEN CO.**

**HILLSBORO NAT. BANK v. BUSCHER.**

**No. 10734.**

United States Court of Appeals,
Seventh Circuit.

May 20, 1953.

Rehearing Denied June 26, 1953.

M. J. Brown, Hillsboro, Ill., J. D. Wilson, Nokomis, Ill., and Robert C. White and Paul M. Hickman, Hillsboro, Ill., for appellant.

Josiah T. Bullington, Hillsboro, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

On June 14, 1950, the Hillsboro National Bank filed its petition for reclamation in the bankruptcy proceedings of The Gill-Owen Company, voluntary bankrupt. Eighteen other persons, firms and corporations likewise filed reclamation petitions in the same matter, some on the same day, June 14, 1950, and others shortly before or after that date.

In the various petitions, the petitioners alleged that they were creditors of a co-partnership doing business as Litchfield Precision Products, the partners being one David E. Owen and one E. A. Gill. The petitioners sought to reclaim all of the stock of merchandise, or merchandise and fixtures or other goods and chattels which they alleged had been sold by Litchfield Precision Products to The Gill-Owen Company, a corporation, on August 31, 1948, otherwise than in the ordinary course of trade. Lists of the goods and chattels sought to be reclaimed were attached to the petitions. The petitions charged that the property sold to the corporate bankrupt on August 31, 1948, embraced substantially all of the assets of the partnership, Litchfield Precision Products. The petition further alleged that the various petitioners, creditors of the partnership, had not been given written notice of the sale as required by the Bulk Sales Act of the State of Illinois, Smith-Hurd, Ill. Ann.Stat. Ch. 121½, § 78 et seq., and that as a consequence said sale of August 31, 1948, was void as against petitioners, and that the assets then sold belonged to the petitioners.

In its brief in this court, appellant states that by agreement of all the parties, the outcome of all other reclamation petitions, except that of D. E. Owen, would abide by the result and decision arrived at on the petition of the Hillsboro National Bank. We therefore limit our consideration to that petition, the answer of the Trustee in Bankruptcy thereto, and the facts disclosed on the hearing thereof.

In answer to appellant's petition the Trustee in Bankruptcy, after a general denial of the allegations in the petition, alleged that the sale and transfer of the goods and chattels from Litchfield Precision Products to the corporate bankrupt, on August 31, 1948, was not such a transfer as required compliance with the Bulk Sales Act of Illinois. The answer further claimed that if said Bulk Sales Act were held to apply to said sale, the petitioner-appellant had waived its right to complain of said sale because: (1) appellant has been guilty of laches; (2) it affirmed said sale by accepting the terms thereof which provided that The Gill-Owen Company assumed and agreed to pay all the debts of Litchfield Precision Products, and that petitioner with full knowledge of the facts has accepted payment from the corporate bankrupt on the indebtedness of said partnership and has thereby ratified and confirmed the sale of August 31, 1948, and (3) that under the facts and circumstances the appellant is estopped from recovering the goods and chattels transferred and that appellant has filed its claim against the corporate bankrupt, participated in the selection of a trustee

and has made frequent appearances in the bankruptcy proceeding.

The matter was first heard by the Referee in Bankruptcy who found in favor of the petitioners in reclamation and ordered that the proceeds of the sale (in bankruptcy) of the goods and chattels transferred on August 31, 1948, amounting to $20,546.33, less costs of administration, should be distributed to the petitioners in reclamation in due course of administration. The Trustee in Bankruptcy petitioned for a review of the referee's order and prayed that the entire record be certified to the District Court.

After consideration of the record and of the briefs and arguments submitted by the parties involved, the District Judge held that the reclamation petitioners were not entitled to the proceeds of the sale of the goods and chattels transferred, but should be treated as general creditors of The Gill-Owen Company. An order to that effect was entered by the District Judge on July 30, 1952. Motions for a new trial and for reconsideration were entered and denied on August 28, 1952. This appeal followed.

A brief statement of the facts disclosed by the record, which are practically undisputed, will aid in the consideration and appraisal of the contentions presented by the appellant and by the appellee.

Early in 1941, David E. Owen, with his wife and one E. A. Gill, formed a partnership, calling it Litchfield Precision Products. In the partnership Owen owned a 40% interest, his wife a 20% interest and Gill a 40% interest. Owen later acquired the interest of his wife. The partnership acquired precision machinery and obtained contracts for war purposes.

In September of 1945, Gill and Owen, along with other small stockholders, incorporated The Gill-Owen Company. This company was organized as a sales agency for the Litchfield Precision Products. On August 31, 1948, the Litchfield Precision Products, the partnership, sold to Gill-Owen Company, the bankrupt herein, 95% of its assets. This was done in order to reduce the office force and overhead expense, and as a part of said transaction Gill-Owen Company assumed and agreed to pay all partnership indebtedness.

Gill and Owen were advised that since they were partners and owned all the interest in the partnership and substantially all the stock in the corporation, and since they expected to pay all the obligations of both, there was no need for them to comply with the Bulk Sales Act in selling and transferring the assets of the partnership to the corporation. Therefore neither the partnership nor the corporation gave any notice to the creditors of the Litchfield Precision Products, the partnership, of the intended sale. No attempt was made by either to comply with the provisions or requirements of the Bulk Sales Law of the State of Illinois.

The record does however show positively that the Hillsboro National Bank did, at or about the time of the transaction, have actual knowledge of the transfer of the goods and chattels involved by the partnership to the corporate bankrupt. The partners advised and consulted with the president of the bank. Both the partnership Litchfield Precision Products and The Gill-Owen Company, Incorporated, maintained checking accounts with the bank. As a matter of fact the record discloses that after the transfer of the partnership assets to the corporation, payroll checks were issued on Litchfield Precision Products check forms and were honored and paid by the bank with funds furnished by The Gill-Owen Company for a payroll account. It was claimed that this was done because the Litchfield partnership had a large number of such forms, which had been printed on the firm's order, still on hand and it would have been wasteful not to use them. This practice continued until 1949.

Moreover, it appears that the bank was acquainted with every detail regarding the financial standing of the co-partnership and of The Gill-Owen Company. The president of the bank visited the plant of the company, saw and examined the machinery. He inquired and was told the names of the attorneys who were handling the transfer. The bank also transferred the account of Litchfield Precision Products to The Gill-Owen Company.

At the time of the hearing the bank had in its possession and produced two notes signed by the Litchfield Precision Products and the co-partners. One for $14,000 was dated March 27, 1949, and the second for $17,900 was dated June 24, 1949. There were renewal notes evidencing the indebtedness of the partnership to the bank on August 31, 1948.

The bank likewise produced at the hearing two notes of The Gill-Owen Company, one for $14,000 dated August 27, 1949, and the other for $17,900 dated August 24, 1949. The president of the bank testified that these latter notes were never used, never went into the bank. They were taken because Gill-Owen was to obtain new capital but failed. They never paid interest on these notes.

Finally the bank took a note for $16,900, dated November 17, 1949, signed by The Gill-Owen Company and secured by a chattel mortgage and also a note of the company for $30,000 dated November 26, 1949, and secured by a real estate mortgage which is stated to be unrecorded.

The record further discloses that the bank was paid $2600 by The Gill-Owen Company on the partnership indebtedness of August 31, 1948. It likewise appears that The Gill-Owen Company in discharge of its promise to assume the partnership debts had paid to creditors, other than the bank, sums aggregating from $12,000 to $14,000.

The appellant claims that the transfer to the corporate bankrupt by the partnership was void under the Illinois Bulk Sales Act, and that the order appealed from should be reversed and the order of the referee should be reinstated.

Appellee contends that the Illinois Bulk Sales Act was not applicable to the transaction of August 31, 1948. It then urges that even if said act is applicable, the petitioner, under the facts and circumstances shown by this record, is estopped to avoid such transaction and has lost by waiver any right to upset it.

In stating the reasons which impelled him to conclude that the petitioners in reclamation were not entitled to the proceeds of the sale of the goods and chattels transferred by a partnership to The Gill-Owen Company, but that they should be treated as general creditors of the corporate bankrupt, the trial court said:

"Under such circumstances I think it extremely doubtful whether the Bulk Sales Act applies; but I shall not labor that question as I am fully convinced that the bank, having acquiesced in the sale and received the benefits therefrom, is not now in a position to prevail in their reclamation petition. The bank accepted the benefits of the transfer knowing all the facts, and later when bankruptcy intervened, filed their claim against the corporation as a general creditor. Now at a later date they are seeking to the exclusion of general creditors to impress a lien on the property transferred to the corporation by the co-partnership on the theory of non-compliance with the Bulk Sales Act. The bank evidenced satisfaction with the transfer although they received no written notice as provided by the Act, cooperated with the transferrer and the transferee in an effort to liquidate their claim and did in fact partially liquidate the same with money which the corporation received and paid them as a direct result of their operations under the transfer. The bank accepted the benefits of the transfer as long as benefits were forthcoming, but now that benefits have ceased and bankruptcy intervened they are asserting that the transfer was at all times void. To permit them to thus gain what advantages could be had by reason of the transfer and then later assert a claim to the property thus transferred because of a failure to give notice under the Bulk Sales Act would permit the Bulk Sales Act to become an instrument of fraud rather than one of protection of creditors. The reclamation petitioner does not come into this, a court of equity, with clean hands."

■■ We agree with the conclusions reached by the trial court and believe it is supported by overwhelming competent authority.

15 A.L.R.2d on page 937 contains an annotation entitled: "Waiver, Estoppel, Acquiesence or Laches of creditor with respect to attack on sale under Bulk Sales Act." On page 939 of said annotation, it is said:

"It appears to be well settled that creditors may waive the right to the benefit of the Bulk Sales Statutes, or estop themselves to claim that the sale was invalid because the requirements of the Bulk Sales Statute were not fully complied with."

The editors cite decisions from courts of review in sixteen of the States and from the Dominion of Canada in support of this proposition. Two of the cases cited are from the Appellate Court of Illinois: Jeffry Hotel Corp. v. Chicopulos, 262 Ill.App. 537; and Marshall Co. v. Leon, 267 Ill. App. 242.

In the Jeffry Hotel case, which was decided in 1931, it developed that a garnishee had purchased hotel furniture in violation of the Bulk Sales Act of Illinois. The evidence disclosed that the plaintiff, who was the holder of a chattel mortgage upon the furniture sold, had agreed to a general compromise of the seller's obligations. The court held that the plaintiff was estopped from claiming a violation of the Bulk Sales Act by the garnishee.

In Marshall Co. v. Leon, which was decided in 1932, it held that a creditor who affirmatively consents to the sale by his debtor of a stock of merchandise, is not entitled to claim that the sale was fraudulent and void because there was a failure to give notice as required by the Bulk Sales Act of Illinois. This case was cited with approval in Brady v. Marshall, 302 Ill.App. 151, 23 N.E.2d 764, which was decided in 1939. In the Marshall case the Appellate Court reversed a judgment for a creditor because of the exclusion of evidence. It said on page 158 of 302 Ill.App., on page 767 of 23 N.E.2d:

"* * * In the absence of this evidence we will not pass on the question of whether it was sufficient to create an estoppel, although it would seem on principle plaintiff would be estopped to

complain that notice was not given under the Bulk Sales Act, if he in fact participated in and took the benefits of a transaction with full knowledge that such notice was not given."

The order and judgment of the District Court is affirmed.