**M & M TRANSPORTATION COMPANY, Plaintiff,**

v.

**U. S. INDUSTRIES, INC. and the United States of America, Defendants.**

No. 75 Civ. 3834 (WCC).

United States District Court,
S. D. New York.

May 26, 1976.

Finley, Kumble, Heine, Underberg & Grutman, New York City, for plaintiff; Leon Finley, Harry Janin, L. Martin Gibbs, Herbert F. Roth, New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant U. S. Industries, Inc.; John Logan O'Donnell, Bruce E. Pindyck, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for defendant United States; Victor J. Zupa, Asst. U. S. Atty., New York City, of counsel.

CONNER, District Judge:

Plaintiff in the above-captioned action stakes its jurisdictional claims on the grounds of diversity and the purported existence of a federal question, coupled with an amount in controversy exceeding $10,000. Presently under consideration are defendants' motions to dismiss, pursuant to Rule 12(b)(1) and 12(b)(6) F.R.Civ.P., for absence of subject matter jurisdiction and for failure to state a claim upon which relief might be granted.

So far as is relevant herein, the facts, as recited in plaintiff's amended complaint, are as follows. Plaintiff, a Massachusetts corporation. was formerly a member of an "affiliated group," within the meaning of 26 U.S.C. § 1504, of which the corporate defendant (USI), organized under the laws of Delaware and having its principal place of business in New York, was common parent. Pursuant to the provisions of 26 U.S.C. § 1501, the USI group filed a consolidated federal income tax return for calendar year 1971; plaintiff has alleged that it paid, through the agency of USI, its own portion of the group's 1971 federal income tax liability, as allocated in accordance with 26 U.S.C. § 1552(a)(1).

Since May 1973, when USI sold its stock in plaintiff to a third corporation, plaintiff has been a member of another affiliated group. The latter, through its common parent corporation, filed a consolidated return

for calendar year 1973, which reflected, *inter alia*, a net operating loss derived solely from plaintiff's 1973 operations and an unused investment credit attributable solely to plaintiff's costs of qualified investment. Plaintiff has filed with the Internal Revenue Service a claim for refund of monies paid on the USI group's 1971 consolidated tax, a claim based upon plaintiff's loss and credit carrybacks to 1971.

The instant action has its roots in Treasury Regulation § 1.1502–78(b), which, in pertinent part, provides that,

"where a loss is deducted from the consolidated taxable income or a credit is allowed in computing the consolidated tax liability for a consolidated return year, any refund shall be made directly to and in the name of the common parent corporation. The payment of any such refund shall discharge any liability of the Government with respect to such refund."

According to the amended complaint herein, "U.S.I. has asserted that [Treasury Regulation § 1.1502–78(b)] requires the payment of the Refund [claimed by plaintiff] to U.S.I. * * *." Contending that "any interpretation of the said regulation which requires payment of the Refund to U.S.I. is unreasonable, does not clearly reflect the income tax liability of the parties, renders the regulation arbitrary and capricious and is beyond the power of the Secretary [of the Treasury] or his delegate to prescribe,"

plaintiff seeks a judgment, pursuant to 28 U.S.C. § 2201, declaring that "the Refund" under contest "is the property of M & M" rather than that of USI and that it "is in equitable trust for M & M"; plaintiff further asks that the United States and USI be enjoined, the one from paying "the Refund," the other from receiving it, pending the determination of the present action.

I.

The Government has launched its motion to dismiss by pressing the familiar principle that the United States may not be sued absent an effective waiver of its sovereign immunity. See, *e. g., Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *United States v. U. S. Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). Although it concedes that such a waiver has been effected with respect to proceedings for income tax refunds under 26 U.S.C. § 7422, and although it characterizes the instant action as no more nor less than a suit for recovery of taxes pursuant to that statute, the Government maintains that plaintiff's failure to satisfy the relevant strictures of 26 U.S.C. § 6532 disallows plaintiff's present claim from consideration in this forum. Plaintiff, for its part, acknowledges that it has not met at least one of the preconditions to suit under Section 7422.[1]

1. 26 U.S.C. § 7422(a) provides that, "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

26 U.S.C. § 6532(a)(1) provides that, with the exception of circumstances not relevant herein, "no suit or proceeding under section 7422(a) for the recovery of any internal revenue tax * * * shall be begun before the expiration of 6 months from the date of filing the claim

required under such section * * *." Plaintiff concedes that the present action was instituted before six months had expired from the date its refund claim was filed.

It must be noted as well that the viability of plaintiff's claim for refund is rendered questionable by the terms of Treas.Reg. § 1.1502–77(a), which provides, *inter alia,* that, "The common parent * * * shall be the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year. No subsidiary shall have authority to act for or to represent itself in any such matter. * * * The common parent will file claims for refund or credit * * *." It may also be noted that USI has not to date filed a claim for refund on the 1971 consolidated tax. See 26 U.S.C. § 6511(d)(2)(A), (4)(A).

Nonetheless, plaintiff argues strenuously that

"this is not a suit for refund of any tax. The Court is not being asked to review plaintiff's claim for refund or to determine the amount thereof. All that is being sought is a declaration of the rights of the parties to a specific property, the refund claim." Plaintiff's Brief in Opposition to Defendant [U.S.A.]'s Motion at 10.

■ The unhappy fact remains, however, that neither plaintiff's original complaint nor its complaint as amended makes any reference to such statutory allowances for federal subject matter jurisdiction and waiver of sovereign immunity as might render the United States amenable to this action. The absence of those references alone would be fatal to plaintiff's suit against the Government. See *United States v. Alabama*, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. Shaw, supra.* However, at least one of plaintiff's briefs on these motions indicates that plaintiff stands ready to amend its complaint anew if to do so would cure those deficiencies. In anticipation of a motion to amend, and thus in the interest of future judicial quietude, this Court is obliged to address plaintiff's argument that the Administrative Procedure Act (the APA), 5 U.S.C. § 701 *et seq.*, supports plaintiff's maintenance of the present action against the Government.[2]

■ Plaintiff has correctly observed that, at least under the authoritative rulings in our own Circuit, the APA "constitutes a waiver of sovereign immunity concerning those claims which come within its scope." *Kletschka v. Driver*, 411 F.2d 436, 445 (2d Cir. 1969); *Kingsbrook Jewish Medical Center v. Richardson*, 486 F.2d 663, 668 (2d Cir. 1973). But see *Sierra Club v.*

*Hickel*, 467 F.2d 1048, 1054 (6th Cir. 1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1545, 36 L.Ed.2d 313 (1973); *Littell v. Morton*, 445 F.2d 1207, 1213 (4th Cir. 1971). Plaintiff is no less correct when it notes that the Treasury Regulation it would have this Court scrutinize constitutes a "final agency action" within the meaning of 5 U.S.C. § 704. See *Toilet Goods Association, Inc. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

■ Having acknowledged so much, this Court must conclude nonetheless that plaintiff's reliance upon the APA is misplaced, for, with respect to the claims herein, plaintiff simply lacks standing to sue under that Act. Suits under the APA may be maintained only by persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute * * *." 5 U.S.C. § 702. As explicated by the Supreme Court in *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), and *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the above provision brings within the pale of APA standing only one who can allege both "that he has been or will in fact be perceptibly harmed by the challenged agency action," 412 U.S. at 688, 93 S.Ct. at 2416, and that the interest he seeks to vindicate is " 'arguably within the zone of interests to be protected or regulated' by the statutes that the [defendant agency is] claimed to have violated," 405 U.S. at 733, 92 S.Ct. at 1365. It must be observed that plaintiff has no footing on either base.

■ As the Fifth Circuit has noted, the "injury in fact" prerequisite to standing contemplates an injury that, "in the event

2. A suit under the APA would properly be brought against the accused agency or against the responsible head of that agency, rather than against "the United States of America." Because neither the Department of the Treasury nor the Internal Revenue Service may be sued *eo nomine*, *Blackmar v. Guerre*, 342 U.S.

512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); *Baumohl v. Columbia Jewelry Co.*, 127 F.Supp. 865 (D.Md.1955), the Secretary of the Treasury and/or the Commissioner of the Internal Revenue Service would be the proper parties to be nominated in an action brought against those agencies.

of a decision adverse to the position of the party asserting standing, [will] be not conjectural or speculative, but certain." *State of Florida v. Weinberger,* 492 F.2d 488, 494 (5th Cir. 1974). In an affidavit on its motion, the Government avers that the Internal Revenue Service has made no determination either that any refund is due under the claim filed by plaintiff or, *a fortiori,* that any particular amount is due under that claim, whether to plaintiff or to USI; the truth of that averment is apparently conceded by plaintiff in its papers in opposition.[3] In such factual context, plaintiff is hardly able, at least at the present time, to assume gracefully the posture of one to whom an injury certainly would flow from a judicial confirmation of the regulation that it challenges.[4]

Moreover, with respect to the second precondition to APA standing, it is enough to note that plaintiff's avowed interest in "a specific property, the Refund"—the anticipated product of a tax benefit accruing from plaintiff's loss and credit carrybacks— does not arguably come under the aegis of any statute that the accused regulation might conceivably be claimed to contravene. Indeed, as the Ninth Circuit has observed in an analogous context, "there is nothing in the [Internal Revenue] Code * * * that

compels the conclusion that a tax saving must or should inure to the benefit [either] of the parent company or of the company which has sustained the loss that makes possible the tax saving." *Western Pacific R.R. Corp. v. Western Pacific R. Co.,* 197 F.2d 994, 1004 (9th Cir. 1951), *vac. other grounds,* 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986 (1953), *prior opinion aff'd,* 206 F.2d 495 (9th Cir.), *cert. denied,* 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407 (1954). Thus, review under the APA in this case, and at the behest of this plaintiff, would be entirely inappropriate.

II.

There remain for consideration plaintiff's claims for declaratory and injunctive relief[5] against USI, under this Court's diversity jurisdiction. As has been underscored above, the subject of that requested relief is the anticipated refund to which plaintiff has laid a formal claim and to which USI, according to plaintiff's allegations, has asserted a claim of right via informal communications with plaintiff.

As plaintiff would have it, the essential issue on the merits of this action is as follows: "Who is entitled to the refund?" Plaintiff's Supplemental Memorandum at 2. Mindful of the prohibition against judicial

---

3. Rather perplexingly, paragraph 6 of plaintiff's amended complaint alleges that "The amount of the Refund and the obligation to make payment thereof by the I.R.S. is not disputed by the I.R.S." In light of the Government's sworn statement cited in the text, and plaintiff's own apparent concession thereto in its papers on these motions, the above-quoted allegation must be construed as no more than a representation that the Internal Revenue Service has neither allowed nor disallowed the refund under claim.

4. Plaintiff urges that a well-established principle governing the consideration of a complaint on a motion to dismiss for failure to state a claim, *i. e.,* that the truth of all well-pleaded allegations is to be assumed, with all inferences therefrom to be drawn in plaintiff's favor, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), dictates this Court's assumption that the subject "refund" eventually will be allowed. The Court cannot accept so disjointed a proposition. Under the principle cited by plaintiff, the allegations whose truth is to

be accepted are *only* those of existing *facts.* Thus, there is no warrant for an assumption of the truth or, rather, accuracy of a complaint's legal conclusions (*e. g.,* the "due" filing of plaintiff's refund claim). Nor, in its contemplation of how the *speculative*—*i. e.,* the non-*factual*—may impact upon its jurisdiction, is the Court obliged to blink either at the present IRS audit of the 1973 consolidated income tax return in which the plaintiff joined and upon which M & M's refund claim is based or at the several Internal Revenue Code and Treasury Regulations sections that, in combination, render at least questionable the receipt of such refund by M & M *or* USI. In sum, the prohibition against judicial entertainment of hypotheticals cannot be circumvented via the simple expedient suggested by plaintiff.

5. The complaint herein does not allege even the barest predicate for injunctive relief under traditional equity principles; nor do plaintiff's papers on these motions make any reference to a basis therefor. The Court is thus itself constrained to give the question a like cognizance.

issuance of advisory opinions, this Court must conclude that it is not its office to resolve that question under the circumstances of this case.

■ Plaintiff argues with some vigor that this action represents a justiciable "case or controversy" warranting relief under the Declaratory Judgment Act. But plaintiff's exertions on that account, however notable, are unavailing. To be sure, this Court does not doubt that, as plaintiff has stressed in its memoranda, there is indeed an active and genuine dispute between plaintiff and USI; the subject of the parties' rivalry—some $440,000 in anticipated refund stakes—is not, after all, an unlikely target of corporate passion. It is no less certain, however, that an established dispute, whatever its heat, does not *necessarily* amount to a "case or controversy" rightfully to be tested in the forum of a court of law.

In the landmark case of *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937), Chief Justice Hughes explained that

"[a] 'controversy' in this sense must be one that is appropriate for judicial determination * * *. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot * * *. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests * * *. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical state of facts * * *. Where there is such a * * * case * * *, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or payment of damages."

The above formulation, conclusory as it is, hardly supplies a conveniently precise standard against which to gauge justiciability in every case. Thus, for example, another court has observed that

"[a plaintiff] must show that the facts are sufficiently complete, mature, proximate, and ripe to place him in gear with his adversary, and this [sic] to warrant the grant of judicial relief. Just when the controversy has reached the state of maturity cannot be a priori defined." *Ohio Casualty Ins. Co. v. Maloney,* 44 F.Supp. 312, 314 (E.D.Pa.1942).

■ However troublesome the concept of justiciability may be in its application to some cases, the prematurity of the issue presented in the instant action is clear enough. In essence, the Court is herein asked to declare the parties' rights to an "asset" that does not presently exist and whose future existence is not a certainty.[6] To be sure, plaintiff may be pregnant with confidence that the subject refund eventually will be allowed. That condition, however, is not enough to permit, in effect, a decree of custody over what is now no more than an expectancy that might never be realized. This Court cannot ignore the often-recited admonition that "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *American Fidelity & Casualty Company v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company,* 280 F.2d 453, 461 (5th Cir. 1960). *Cf. Brown & Root, Inc. v. Big Rock Corporation,* 383 F.2d 662, 665–66 (5th Cir. 1967); *Johnson v. Interstate Transit Lines,* 163 F.2d 125, 128–29 (10th Cir. 1947).

None of the multitude of cases cited by plaintiff in suggested support of its position is apposite to the present action. Thus, for example, among the decisions cited are cases involving, at the time of suit, injuries already sustained, *Mastan Company v. A. L. Jackson,* 321 F.Supp. 865 (N.D.Ill.E.D.1971), debts *in esse, Landers Frary & Clark v. Vischer Products Co.,* 201 F.2d 319 (7th Cir. 1953); *Tomlinson v. Smith,* 128 F.2d 808

---

6. See note 4 *supra.*

(7th Cir. 1942), admitted tax liabilities, *Henshel v. Guilden,* 300 F.Supp. 470 (S.D.N.Y. 1969), and immediate contract obligations, see, *e. g., Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Ohio Casualty Ins. Co. v. Maloney, supra.* Other cases cited by plaintiff involve questions of patent infringement, cases ripe for declaratory relief on the principle that the Declaratory Judgment Act was intended " 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued,' " *Akron, Canton & Youngstown R. Co. v. Barnes,* 215 F.2d 423, 427 (7th Cir. 1954), *quoting E. Edelmann & Co. v. Triple-A Specialty Co.,* 88 F.2d 852, 854 (7th Cir.), *cert. denied,* 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937); *Dewey & Almy Chemical Co. v. American Anode, Inc.,* 137 F.2d 68 (3d Cir. 1943); *Formmaster Corporation v. G. H. Bishop Co.,* 138 F.Supp. 115 (S.D.N.Y.1956).

It must further be observed that plaintiff has wholly failed to demonstrate that a declaratory judgment in this case would "effectuate the purpose[s] of the [Declaratory Judgment] Act to afford relief from uncertainty and insecurity with respect to legal relations." *Sears, Roebuck & Co. v. American Mutual Liability Co.,* 372 F.2d 435, 438 (7th Cir. 1967). Plaintiff's suggestion that declaratory relief at this juncture is "essential"—to establish "who should prosecute the Claim for Refund through the office of the I.R.S. * * * [,who] should bear the expense of such services * * * [,who] should determine whether to bring action if part of the claim is disallowed and who should bear the expense of such an action"—if not in part disingenuous, see Treas.Reg. § 1.1502–77(a), is entirely unpersuasive. With respect to the prosecution of a claim and the institution of a judicial action, plaintiff, with the aid of its counsel, hardly requires a declaration from this Court to understand the course set it by the combined force of the above-cited Regulation, various sections of the Internal Revenue Code, USI's failure to date to file a claim for refund, and the fact that the United States could not be bound by any judgment that might issue in this case; nor is the Court convinced, in light of those combined factors, that its entertainment of the present suit might best insure against a multiplicity of actions and an unnecessary financial investment by plaintiff.[7] It is even more to the present point, however, that

"the requirements of justiciability are not met if the complainant merely alleges that he 'is at a loss to know what course to pursue'. The [Declaratory Judgment] Act is not designed to eliminate the function of attorneys." 6A Moore, Federal Practice ¶–57.12, at 57–111, *quoting Duart Mfg. Co. v. Philad Co.,* 30 F.Supp. 777 (D.Del.1939).

For the reasons discussed above,[8] defendants' motions to dismiss are granted.

SO ORDERED.

---

**7.** Plaintiff has additionally argued that, "It cannot be too strongly emphasized that possession of the proceeds of the Refund and ability to use the funds is an important consideration in this case. Interest on a judgment obtained many years later is no substitute for present use of the money." Plaintiff's Supplemental Memorandum at 4. Unhappily, the latter suggestion makes apparent sense only if it is viewed as a litigative slip belying plaintiff's repeated protestations that the present action was not conceived and instituted as a would-be suit for refund. See note 1, *supra,* and accompanying text.

**8.** In view of this Court's ruling on other grounds, it has not been necessary to address defendants' argument that the "Tax Exception" clause of 28 U.S.C. § 2201 leaves the Court without subject matter jurisdiction over this action.