(No. 13631.—Judgment affirmed.)
Frank W. McKey, Trustee in Bankruptcy, Defendant in
Error, *vs.* Arthur B. McCoid *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1921—Rehearing denied October 5, 1921.*

1. Creditors' bills—*complainant in creditor's bill must prove
fraudulent transfer of debtor's property.* The complainant in a
creditor's bill, under section 49 of the Chancery act, who seeks to
discover property of the judgment debtor in the hands of others
must prove a transfer of the debtor's property which in fact or in
law was fraudulent as to creditors, or, in case of voluntary con-
veyance, to prove that the debtor did not retain enough money or
property to pay his debts.

2. Same—*insolvency of judgment debtor is prima facie estab-
lished by proof of return of execution unsatisfied.* The insolvency
of the judgment debtor is *prima facie* established by the allegation
in a creditor's bill and proof of the return of an execution on the
complainant's judgment unsatisfied.

3. Debtor and creditor—*property voluntarily transferred be-
tween husband and wife without consideration is subject to debts
of donor.* Where a husband or wife has without consideration
transferred property to the other, the transfer of which renders
the donor incapable of paying his or her debts, the property trans-
ferred is subject to the satisfaction of a judgment against the donor.

4. Same—*payments made by an insolvent husband to wife for
benefit of her property are fraudulent in law—interest.* Voluntary
payments made without consideration by a husband when he is
insolvent, for the benefit of the property of the wife, are deemed
fraudulent in law as against creditors, and to the amount of such
payments the property should be subjected to a creditor's judgment
on the filing of a creditor's bill even though there is no actual fraud
or bad faith on the part of the wife, but in the absence of fraud
on the wife's part interest should not be charged on said payments.

5. Same—*when interest will be allowed in equity.* The rule fol-
lowed in equity is to allow interest where warranted by equitable
considerations and to refuse such allowance when it does not com-
port with justice.

6. Same—*what payments by insolvent husband to wife are too
remote to be reached by creditor's bill.* Payments by an insolvent
husband to his wife to re-pay borrowed money which she had al-
ready used to pay taxes on her property and for her to use to pay
interest on a sum advanced by her father when the property was

purchased but which did not stand as a debt against the property or against her, are too remote to be reached by a creditor's bill seeking to subject the property to the satisfaction of complainant's judgment to the extent of payments by the husband accruing to the benefit of the property.

CARTWRIGHT, DUNCAN and THOMPSON, JJ., dissenting.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

ALEXANDER H. MARSHALL, for plaintiffs in error.

MOSES, ROSENTHAL & KENNEDY, (JULIUS MOSES, and HIRSCH E. SOBLE, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

John L. Bobo secured a judgment against Arthur B. McCoid, one of the plaintiffs in error, and later filed his creditor's bill in the circuit court of Cook county to subject certain real estate of Anna L. McCoid, the other plaintiff in error, in the city of Chicago, to a lien in favor of his (Bobo's) judgment. McCoid was thereafter adjudged a bankrupt, and his trustee, Frank W. McKey, was allowed to intervene in the creditor's bill proceeding, and was later substituted for Bobo as complainant and prosecuted said bill for the benefit of all the creditors. The chancellor entered a decree finding that in July, 1917, Bobo had recovered a judgment for $5466.66, upon which an execution was issued and returned "no part satisfied;" that on March 12, 1910, another judgment had been recovered by one Turpin for $305.70, upon which an execution was issued and returned "not satisfied;" that in each instance on levy of execution McCoid filed a schedule showing no property non-exempt. The decree further found that from the year

1900 until the date of filing the bill, July 1, 1918, McCoid was insolvent; that Anna L. McCoid, his wife, knew of his financial condition as early as March 1, 1910; that on March 30, 1910, Mrs. McCoid became the owner of the real estate in question, the title to which was taken in the name of her father, Jordan C. Lawrence, but that the title was so taken with the understanding that the property belonged to her; that McCoid contributed the sum of $167 of the purchase price out of his own funds. The decree also found that in the course of the next seven years Mrs. McCoid received various sums of money from her husband, which were contributed by him during his insolvency, for the purpose of paying principal, interest or taxes upon the real estate; that the effect was to benefit Mrs. McCoid's interest in the property and that these sums should have been applied by McCoid to the payment of his debts; that prior to McCoid's adjudication in bankruptcy, August 16, 1918, he had paid in this manner to Mrs. McCoid sums which, with interest thereon, aggregated $5240.69, to which amount the decree found her property should be impressed with a lien in favor of the complainant, as trustee, and ordered the property sold by the master in chancery unless said sum should be paid by her within five days. On appeal to the Appellate Court the decree was affirmed in part but was reversed as to certain items which the Appellate Court found, as a matter of fact, did not inure to the benefit of the property. The decree was also modified by striking out the interest allowed, amounting to $1141.44. The cause comes here by writ of *certiorari.*

McCoid contends that these payments were made pursuant to an agreement by him to pay rent to his wife for the apartment in the building owned by her and in which they and their daughter were living. We are of the opinion, however, that none of the sums included in the decree were intended to apply on rent or to meet household expenses, but that, with the exception of those hereinafter

considered, said sums were contributed with the intent and purpose of benefiting the property of Mrs. McCoid, as found by the decree. The Appellate Court also found as a matter of fact that there was no actual fraud on the part of Mrs. McCoid; that there was no fraudulent conveyance of the property to her, and that McCoid never had any interest in the property involved, legal or equitable, but that the payments of money to her amounted to constructive fraud as against McCoid's creditors. It is evident from the record that there was no actual fraud on her part.

It is contended by plaintiffs in error that the decree is at variance with the allegations of the amended bill, and that the Appellate Court erred in holding that the payments by McCoid to his wife amounted to fraud in law as against the creditors of McCoid; that the bill in this case was formed on the ground that McCoid had an interest as *cestui que trust* in the property in question, but that it contains no allegations charging conveyances for the purpose of defrauding creditors; that there was no legal fraud charged in the bill, and that under the proof in the case the decree on the bill could not be sustained. The bill charges that on the 13th day of July, 1917, Bobo procured a judgment against McCoid for the sum of $5466.66; that execution was issued thereon and returned *nulla bona;* that the judgment remained in full force and effect; that the complainant believes that McCoid has real estate or other property or some interest therein, or money on hand or deposited to his credit or use, to which title is held in trust by others for him, which the complainant is unable to reach, and it describes the real estate involved here. The bill also alleges that McCoid is by occupation a lawyer, and the complainant verily believes he has an income of not less than $10,000 a year and that he has property in the city of Chicago the exact location of which the complainant does not know; that Mrs. McCoid or the Drexel State Bank of Chicago has money which actually belongs to McCoid which

should be applied toward the payment and satisfaction of complainant's judgment, and prays discovery of whatever property may be held by others for McCoid.

One holding a judgment upon which execution has been issued and returned "not satisfied" may, under section 49 of the Chancery act, file a bill against the judgment debtor, or against any others who he has reason to believe are holding property for the judgment debtor, to discover and subject such property to the payment of the judgment. Under such a bill it is necessary that the complainant prove a transfer of the judgment debtor's property which in fact or in law was fraudulent on his creditors, or, in case of voluntary conveyance, to prove that the debtor did not retain enough money or property to pay his debts. The insolvency of the debtor is *prima facie* established by the allegation in the bill and proof of the return of an execution on the complainant's judgment unsatisfied. (*Dimond v. Rogers,* 203 Ill. 464.) In this State it is held that where a husband or wife has without consideration transferred property to the other, the transfer of which rendered the donor incapable of paying his or her debts, the property transferred should be subjected to the satisfaction of a judgment against such donor. There appears to be no good reason why a distinction should be drawn between the voluntary payment of money to be used in the purchase of property and the voluntary transfer of property. If the payments of money in question were made for the benefit of the property involved in this proceeding it was not error to decree that the property should be subjected to the payment of such sums. The decree finds, and the evidence supports such finding, that McCoid was insolvent from the year 1900 to the date of his adjudication in bankruptcy and that these payments were made while he was insolvent. The chancellor did not hold that McCoid did not have the right to contribute the sums of money referred to, to the actual support of his family, but finds that the record in

this case does not disclose that such sums were so contributed, but that, on the contrary, they were contributed for the express purpose of making payments on the property held by Mrs. McCoid. The bill was sufficiently broad to cover the proofs and the decree is not void for variance.

The next question is whether or not these payments constituted fraud in law as against creditors of McCoid. The circuit and Appellate Courts found that on March 31, 1910, the payment to Mrs. McCoid of $167 was contributed toward the purchase price of the property in question, and in November, 1910, $400 was contributed by McCoid toward the payment of principal and interest on the first mortgage on the property; that in February, 1912, $145 was paid to Mrs. McCoid to apply on one of the mortgages on the property; in June, 1912, $604.50, which McCoid paid directly to the owner of one of the mortgages on the premises; in January, 1914, $1000, used for the purpose of paying the amount due on first mortgage; in April, 1916, $100, interest on first mortgage; October, 1916, $400 on first mortgage; October, 1917, $200 to pay interest on first mortgage. Both the chancellor and the Appellate Court find that these payments went directly to the benefit of the property in question, and on review of the record in this case we are convinced that such finding is correct. It is the rule that transactions of this character between husband and wife, where the former is insolvent, are to be carefully scrutinized. (*McKey* v. *Emanuel,* 263 Ill. 276.) Voluntary payments, made without consideration by the husband when he is insolvent, to the benefit of the property of the wife, are deemed fraudulent in law as against creditors. (*Vietor* v. *Swisky,* 200 Ill. 257; *Hauk* v. *VanIngen,* 196 id. 20; *Schuberth* v. *Schillo,* 177 id. 346.) We are of the opinion that the Appellate Court did not err in finding that these payments were fraudulent in law as against creditors of McCoid.

Defendant in error assigns cross-error to the holding of the Appellate Court deducting the sum of $1141.44 interest, citing *Walker* v. *Montgomery,* 249 Ill. 378, where it was held that a fraudulent grantee who has received property for the purpose of hindering and delaying the creditors of the grantor is chargeable with interest on the value of the property received. The Appellate Court in this case, however, finds there was no actual fraud or bad faith on the part of Mrs. McCoid. We are of the opinion that this finding is supported by the evidence. While it is immaterial in determining whether or not there was constructive fraud or fraud in law as against creditors in the payments made, (*Harting* v. *Jockers,* 136 Ill. 627; *Marmon* v. *Harwood,* 124 id. 104;) it does affect the question as to whether or not defendant in error would have a right to have interest charged on the amount found to have been paid by the insolvent husband for the benefit of the property of Mrs. McCoid. There is no evidence that she received the sums paid to her for the purpose of aiding McCoid to defraud his creditors. The rule followed in equity is to allow interest where warranted by equitable considerations, but where such allowance does not comport with justice and equity it may be disallowed. (*Golden* v. *Cervenka,* 278 Ill. 409.) We cannot say, on review, that the holding of the Appellate Court as to the matter of interest is not in accordance with the equities of the case.

Defendant in error also contends that the Appellate Court erred in deducting certain items of money paid by McCoid to Mrs. McCoid from the amount found due by the decree of the circuit court. One of these items was the sum of $125 paid by McCoid to Mrs. McCoid in May, 1911, to re-pay money which she had borrowed from her sister, it appearing that she had used the money which she so borrowed to pay taxes on the property. At the time it was paid by McCoid to his wife the taxes against the prop-

erty had been paid and the obligation that existed was between Mrs. McCoid and her sister. If she chose never to re-pay her sister it would make no difference so far as the discharge of the item against the property was concerned. This item is too remote. The other three items, for the sums of $125.25, $230.25 and $67.50 which McCoid contributed to his wife, were for the purpose of paying interest to her father on the $12,000 which he invested in the property at the time it was purchased. The evidence shows that this property was purchased on March 31, 1910, by Jordan C. Lawrence, father of Mrs. McCoid, who took the title to the property subject to two mortgages of $16,000 and $3300, respectively. The balance of $13,000 was made up by Lawrence, who contributed $12,000, and Mrs. McCoid, who contributed $1000, $167 of which was, as we have seen, contributed by McCoid. Lawrence testified that he bought the property for his daughter, and that he gave her the $12,000 at the time of the purchase for the purpose of making a home, and while the record shows that Mrs. McCoid paid him interest until in 1915, when the property was deeded to her by her father, it is evident that she was under no obligation to pay the interest on the $12,000 so far as clearing the property was concerned. The $12,000 did not stand as a debt against either her or the property, and her payment of interest on that amount was purely voluntary. These items are likewise too remote, and the Appellate Court did not err in striking them from the decree for that reason.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CARTWRIGHT, DUNCAN and THOMPSON, JJ., dissenting.