John Tarpoff, Plaintiff-Appellant, v. Henry D. Kar-
andjeff and Ethel Karandjeff, Defendants-
Appellees.

Gen. No. 64–10.

Fifth District.

September 19, 1964.

454

Listeman and Bandy, of East St. Louis, and Morris B. Chapman, of Granite City (Charles H. Jungels, of counsel), for appellant.

Lueders and Robertson, of Granite City, and McGlynn & McGlynn, of East St. Louis, for appellees.

WRIGHT, JUSTICE.

Plaintiff, John Tarpoff, brought this action in the Circuit Court of Madison County, Illinois, to impress a constructive trust upon two parcels of real estate,

title to which is in the name of the defendant, Henry D. Karandjeff. The complaint was filed on February 20, 1950, and after issue was joined by responsive pleadings the matter was referred to a Special Master in Chancery for the hearing of evidence and making findings. At the conclusion of the plaintiff's evidence, the Master in Chancery filed a report with the trial court recommending that the complaint be dismissed for want of equity. The trial court entered a decree in accordance with the recommendation of the Master in Chancery and the plaintiff appealed to the Supreme Court of Illinois. On appeal, the Supreme Court of Illinois found that based upon the evidence at the close of the plaintiff's case, there was a fiduciary relationship between the plaintiff and the defendant, Henry D. Karandjeff, at the time the property was conveyed to the defendant and that the defendant had not, at that point, proved that he had made a full and frank disclosure of the financial condition surrounding the transaction. The decree of the trial court was reversed and remanded. Tarpoff v. Karandjeff, 17 Ill2d 462, 162 NE2d 1.

The trial court referred the matter back to the Special Master in Chancery who, after hearing all of the evidence, filed his report of proceedings and findings of law and fact wherein and whereby he again recommended that the complaint be dismissed for want of equity. The trial court reviewed the findings of the Master, heard arguments of counsel on the exceptions to the finding, requested and reviewed briefs, and filed a written opinion confirming the findings of fact and law of the Master. On June 26, 1963, the trial court entered a final decree approving and confirming the Master's recommendations and dismissing the complaint for want of equity. It is from the final order of June 26, 1963, that plaintiff brings this appeal.

 A constructive trust is raised not by any agreement or understanding of the parties but by the operation of law and is imposed by a court of equity upon the broad ground of public policy. Its purpose is to prevent a person from holding, for his own benefit and advantage, property which he has gained by reason of a special trust or confidence placed in him by an innocent party. However, before a court of chancery will declare a constructive trust, there must exist either fraud, actual or constructive, or an abuse of a confidential or fiduciary relationship. Equity looks to the substance of a transaction rather than the form or nomenclature and whether or not a fiduciary relationship exists between the parties, or whether or not there has been an abuse of that relationship depends upon all of the facts and circumstances pertaining to the particular case. Compton v. Compton, 414 Ill 149, 111 NE2d 109; Stephenson v. Kulichek, 410 Ill 139, 101 NE2d 542.

 The mere existence of a confidential or fiduciary relationship does not, of itself, give rise to a constructive trust. The facts and circumstances must also disclose fraud or an abuse of that confidential or fiduciary relationship. Jones v. Washington, 412 Ill 436, 107 NE2d 672. The burden of proving the existence of such a confidential or fiduciary relationship and the abuse thereof rests squarely upon the party who asserts such a relationship as a basis for the imposition of a constructive trust. Maley v. Burns, 6 Ill2d 11, 126 NE2d 695. Where, however, the confidential or fiduciary relationship is shown to exist, the person seeking to impose a constructive trust is aided in his proof by a presumption that the transaction complained of resulted from fraud or undue influence and the burden of affirmatively proving the good faith or the absence of undue influence in the transaction rests upon the party denying the existence of the

457

trust. Tarpoff v. Karandjeff, supra; McCartney v. McCartney, 8 Ill2d 494, 134 NE2d 789. To overcome this presumption, the fiduciary must show that he has made a free and frank disclosure of all of the relevant information which he had and that the consideration for the transaction was adequate. Schueler v. Blomstrand, 394 Ill 600, 69 NE2d 328; Masterson v. Wall, 365 Ill 102, 6 NE2d 161.

In this case the record of evidence is long, involved and conflicting on many points. A detailed review of the testimony of all the various witnesses and the many exhibits offered and accepted would only serve to unduly burden this opinion. Suffice to say, however, that the detailed findings of both the Master in Chancery and the Chancellor contained in the record are amply supported by the evidence.

Briefly stated, the facts disclose that the plaintiff, John Tarpoff, is a native of Macedonia, who came to this country in 1905. Although he had little formal education, he was an able businessman. From 1907 to 1921 he successfully conducted a grocery business in the City of Granite City, Illinois, and acted as a business advisor to his fellow countrymen in that city. He retired from the grocery business in 1921, and thereafter, actively engaged in the buying and selling of real estate in and about Granite City. From 1928 through 1940, he conducted a meat packing business along with these real estate activities and the record shows that from 1911 to 1940, he executed deeds, leases, mortgages, notes, checks, extension agreements, time deposit certificates and other business instruments. Throughout the period in question, he spoke the English language as well as his native tongue of Macedonia, and was familiar and could converse in several other languages. At the trial, he was able to identify with a great deal of accuracy some one hundred or more exhibits.

The defendant, Henry D. Karandjeff, was also a native of Macedonia and came to this country in 1906 at the age of twelve. He received an equivalent to a sixth grade education in his native country and from 1906 to 1911, he worked at various places as a porter and an errand boy in Granite City, Illinois. He began working for the Granite City Trust & Savings Bank of Granite City, Illinois, in 1911 as a janitor and worked his way up until he became President of the bank in 1937.

Plaintiff, John Tarpoff, first began doing business with Granite City Trust & Savings Bank on a limited basis in 1911. The record discloses that he had made time deposits and received time certificates from the Granite City Trust & Savings Bank during the period of 1911 to 1913. Soon thereafter, he became acquainted with the defendant, Henry D. Karandjeff, and the defendant induced him to transfer his banking business to the Granite City Trust & Savings Bank. From 1915 to 1933, the defendant, Henry D. Karandjeff, assisted the plaintiff, John Tarpoff, in the preparation of deposit tickets, the depositing of checks, the filling in of check stubs and in other banking business.

From the time the plaintiff and defendant became acquainted until the early 1940's, the Tarpoff Family and Karandjeff Family were friendly but were not close socially. The record discloses that in 1928, the defendant returned to Europe for the purpose of visiting his father, who was then ill, and while in Europe he visited the father of the plaintiff. Although there is conflicting evidence as to some alleged moving pictures taken on this trip, the record clearly shows that plaintiff, John Tarpoff, and defendant, Henry Karandjeff, were friendly and had many social and business contacts over a period of 25 or 30 years.

The business transactions leading up to this litigation began in 1922, when plaintiff and defendant pur-

chased a building at 1314 Niedringhaus Avenue, Granite City, Illinois, as tenants in common. The purchase price was $17,474.80 of which the plaintiff paid $4,237.70 and the defendant paid $4,237.40. The balance of $9,000 was financed by a mortgage with the Granite City Trust & Savings Bank. Of the amount paid by defendant, he borrowed $2,000 from the plaintiff which was evidenced by a note and mortgage to the plaintiff. This note was later paid with interest.

In 1925, plaintiff and defendant purchased an adjoining lot as tenants in common, and in 1926, erected a building thereon which has become known as 1310 Niedringhaus Avenue, Granite City, Illinois. There were various financing deals carried on between the parties at this time, which culminated in a $35,000 mortgage to St. Louis Union Trust Company, later assigned to the First National Company of St. Louis, Missouri, which was evidenced by a series of notes dated in 1926 and secured by a mortgage on the two parcels of real estate. The notes and mortgages were signed by the parties and their wives.

In the operation of the two parcels of real estate, the defendant, Henry Karandjeff, took care of the renting of the property, the accounting, and paper work and the plaintiff, John Tarpoff, looked after the maintenance and repairs. Defendant prepared and submitted to the plaintiff an annual report of receipts, disbursements and the financial condition of the business venture. The business venture went well until 1932. The first three notes were paid at maturity. Two were paid for $1,500 and one for $2,000. The parties first began to have difficulties with the property and the mortgage in 1932 and at this time they executed a series of three extension agreements with the First National Company. No payments of principal were made after 1931.

In October of 1935, the property was refinanced. A second mortgage in the amount of $14,000 was made to Granite City Trust & Savings Company and assigned to Naum Gitcho. The proceeds of this second mortgage were used to pay $10,000 on the principal and $4,000 on the interest under the first mortgage to First National Company. An additional check from Karandjeff for $125 also was applied on interest. Also, at that time, Henry Karandjeff and wife, Ethel Karandjeff, and John Tarpoff and wife, Pareskeva Tarpoff, entered into an agreement with the First National Company whereby the parties assigned all rents to the First National Company and the First National Company extended the due date on the principal indebtedness to October, 1938. The principal amount due at this time was $20,000 on the first mortgage to the First National Company and the sum of $14,000 on the second mortgage to Naum Gitcho, making a total mortgage indebtedness of $34,000.

From October, 1935, to October, 1938, no principal payments were made and on October 20, 1938, the First National Company was in receivership. The trustees of the First National Company began to press for payment and threatened foreclosure. In December of 1938, the parties engaged John B. Edwards, an attorney from St. Louis, Missouri, to represent them and there followed a series of letters from the attorney to them. Word was received that foreclosure proceedings were begun in the Circuit Court of the City of St. Louis, Missouri, on March 20, 1939.

On March 13, 1939, the plaintiff, John Tarpoff, and his wife, conveyed their home property and all their other property holdings to their two sons, Vasil and John, and the only properties they retained were two vacant lots in Roxanna, Illinois. On March 16, 1939, the plaintiff incorporated his packing business and on

461

March 20, 1939, the business property was conveyed to the corporation. No stock was ever issued in the corporation.

The plaintiff and the defendant continued their efforts to meet the financial obligations on the mortgages, but failing to do so, they offered to transfer the property to B. T. Roussey, in consideration of his assumption of the mortgage indebtedness and liabilities. Neither the plaintiff or the defendant were to receive any further cash consideration for the transfer to Mr. Roussey. Their sole requirement was to be relieved of the liability under the mortgages. B. T. Roussey declined the offer and when the parties were not successful in finding a third party to accept the property under those conditions, they each offered the property to the other for no other consideration than the full release of the transferring party from the obligation of liability of the mortgages.

Finally, on February 20, 1940, plaintiff, John Tarpoff, and his wife executed a deed to the property located at 1314 Niedringhaus Avenue, Granite City, Illinois; a deed to the property located at 1310 Niedringhaus Avenue, Granite City, Illinois, and an agreement between plaintiff and his wife and the defendant and his wife which purported to settle the account between the parties. This agreement was signed by John Tarpoff and Paraskeva Tarpoff, as vendors, and Henry D. Karandjeff and Ethel Karandjeff, as purchasers. On this same date, a resolution was adopted by Tarpoff & Company, Inc., authorizing the corporation to sign notes in the sum of $3,600 payable to Granite City Trust & Savings Bank and authorized the execution of a mortgage on corporation property to secure the payment of the notes. On February 20, 1940, notes in the sum of $3,600 were executed by Tarpoff and Company, Inc., and John Tarpoff, Pareskeva Tarpoff and Vasil Tarpoff, individually, payable to Granite City Trust & Savings Bank and a

mortgage was executed by Tarpoff and Company, Inc., and witnessed by Pareskeva Tarpoff to Granite City Trust & Savings Bank to secure these notes. After the execution of the deeds on February 20, 1940, by plaintiff and his wife, to defendant, Henry Karandjeff, and the release of their obligations under the mortgages, the corporation, organized by plaintiff on March 16, 1939, was dissolved and the properties, both business and home, reconveyed to the plaintiff.

There is considerable conflict in the evidence as to what took place with regard to the execution of the deeds in question. In the testimony presented on behalf of the plaintiff, it was claimed that the two deeds were executed at the home of the plaintiff in the presence of his wife, Pareskeva, and his son, Vasil, and the defendant. That the name of Henry Karandjeff, as grantee, was not placed in the deeds at that time; that defendant had told the plaintiff that the bank was going to foreclose; that nothing could be done about it and that a secret third party would take over the property and assume the mortgage obligation if the parties would assume $5,000 in unsecured obligations. In the testimony of the plaintiff, it was contended that the deeds were completely in blank at the time of the signing. The testimony of plaintiff's son Vasil, was to the effect that the names of John Tarpoff and Pareskeva Tarpoff and the description of the property were typed in the deeds at the time they were signed but the name of the grantee, Henry Karandjeff, was not in the deeds.

In further support of his position, the plaintiff presented the testimony of one Armin Hartman, who stated that he was a teacher of typing at Summers Business College in East St. Louis, Illinois, and a grade school teacher in Granite City, Illinois. He testified that he had examined the deeds in question and that from his visual examination, he had concluded that the instruments were not typed by an

expert. He also concluded that the two instruments had not been typed by the same typist. He also concluded that it would be possible for an expert typist to type material on a deed, remove it from the typewriter, insert it again and accomplish a perfect, or near perfect horizontal and lateral alignment.

The defendant, Henry D. Karandjeff, testified that the instruments were complete at the time they were presented to the Tarpoffs' for signing on February 20, 1940, at the Granite City Trust & Savings Bank after banking hours. That the persons present were John Tarpoff, Pareskeva Tarpoff, Vasil Tarpoff, Ethel Karandjeff, Henry D. Karandjeff and Bernice Jilek. He also testified that Bernice Jilek, an employee at the bank and a Notary Public, took the acknowledgement of the signatures on these instruments. The testimony of Mr. Karandjeff was supported by the testimony of Bernice Jilek, who verified the fact that she was an employee of the Granite City Trust & Savings Bank, and had prepared the deeds at the request of Mr. Karandjeff. She further testified that the instruments were completed in one insertion in the typewriter and that the name of the grantee, Henry D. Karandjeff, had been typed in the instruments at the same time that the names of John and Pareskeva Tarpoff, the description and other typewritten matter had been placed on the deeds. She testified that she saw John Tarpoff and Mrs. Tarpoff affix their names to each of the deeds in her presence and that she took the acknowledgement and affixed her notarial seal and signature.

The defendant also presented the testimony of George Swett, who is a questioned document examiner with twenty-one years experience and training in the field. He testified he had examined the deeds under microscope, had prepared films of same and had prepared blow-ups of the films in making his studies. He

testified he had also applied the special grid to the face of the deeds with a view to determine the vertical and horizontal alignment of the letters and that all parts of the deeds were in perfect horizontal and vertical alignment except the numeral "20" and the month "February" which was inserted at the bottom of the deed. He also testified that from his microscopic examination, he determined that the original date was typed on the deed as the 29th day of January, 1940.

Defendant's evidence further showed that the deeds were prepared on January 29, 1940, but because plaintiff had contended he had advanced an additional sum of around $2,000 to the building account from monies he had received from an insurance company, the deeds were not executed on that date. The defendant further testified that on February 20, 1940, the parties met at the Granite City Trust & Savings Bank after closing hours. At this meeting, the plaintiff and defendant and their wives executed an agreement which set forth the obligations of the parties. The date of January 29th was changed to February 20th on the two deeds and the plaintiff and his wife executed these deeds which were completely filled in and contained the name of Henry D. Karandjeff, as grantee. He further testified that a $3,600 note and mortgage bearing the same date, February 20, 1940, was signed for the corporation by Vasil Tarpoff, President, and John Tarpoff, Secretary-Treasurer, and witnessed by Pareskeva Tarpoff. That the note was signed by Vasil Tarpoff, John Tarpoff and Pareskeva Tarpoff, individually, and that a corporate resolution was also produced authorizing the execution of said note and mortgage. He testified that the proceeds of $3,600 were used to pay the obligations under the agreement and that the two deeds and the mortgage were filed for record on April 6, 1940.

465

On June 4, 1963, the Chancellor filed a written opinion which, in part, states as follows:

"A fiduciary or confidential relationship having been established, the defendant is therefore called upon to prove the fairness of the transaction (Weenerholm v. Weenerholm, 382 Ill 254). This, in the court's opinion has been done. For a true prospective of this transaction it is necessary to view it in the financial and economic atmosphere in which it occurred. The total indebtedness on the property was nearly $39,000.00. The mortgage, in the original sum of $35,000.00, had been extended from time to time and a foreclosure had been threatened. So concerned was the plaintiff during this period that he took steps to avoid property loss to the extent that he incorporated and conveyed his business assets to Tarpoff and Company, Inc., in 1939 and by deed conveyed his residence property to his two sons, Vasil and John Tarpoff, also done in 1939. Further, as shown by the defendant's evidence, the property was offered to others, including the plaintiff himself, if he should wish to assume the indebtedness on same. . . .

"In order to be convinced by plaintiff's evidence relative to the scheme by which he was induced to convey this property to the defendant, the court would have to ignore no less than six documents, all interrelated, admittedly executed by the plaintiff and members of his family, which documents were mentioned above but are now identified as follows:

1. Plaintiff's Exhibit 11, warranty deed, plaintiff and Mrs. Tarpoff grantors to defendant, grantee, to Tract 1 of the complaint, dated February 20, 1940.

2. Plaintiff's Exhibit 10, warranty deed, plaintiff and Mrs. Tarpoff grantors to defendant, grantee, to Tract 11 of the complaint, dated February 20, 1940.

3. Defendant's Exhibit No. 21, agreement, between plaintiff and wife and defendant and wife, dated February 20, 1940.

4. Plaintiff's Exhibit S, Resolution of Tarpoff and Company, Inc. reciting authority to execute Items numbered 5 and 6, which follow, dated February 20, 1940.

5. Defendant's Exhibit 23, Promissory Note executed by Tarpoff and Company, Inc. and John Tarpoff, Pareskeva Tarpoff and Vasil Tarpoff individually, payable to Granite City Trust & Savings Bank, in the sum of $3,600.00, dated February 20, 1940.

6. Defendant's Exhibit 22, executed by Tarpoff and Company, Inc. and witnessed by Pareskeva Tarpoff, dated February 20, 1940, to secure Defendant's Exhibit 23.

"This the court cannot do, particularly in the light of plaintiff's ability to read (Rugen v. Van Bersacht, 74 Ill App 359) and his experience in the business and real estate transaction. . . .

"In conclusion, considering the evidence as a whole, including the fact that an annual accounting was made to the plaintiff during all of the years that the party owned said premises (Plaintiff's Exhibits 8, 8-A through 8-P), in the opinion of the court, defendant has established clearly and convincingly that he has dealt fairly with the plaintiff, has not taken any advantage of him, and has committed no fraud upon the plaintiff."

▪ In this case the Master in Chancery saw the witnesses and heard them testify and then filed a

467

detailed report covering the allegations of the plaintiff, the allegations of the defendant and the findings of the Master based upon the evidence adduced at the hearing. The Chancellor reviewed the evidence and the findings of the Master in Chancery, heard arguments of counsel, requested, received and considered the written briefs submitted by the parties and filed a well reasoned written opinion, part of which is heretofore set out, approving and confirming in detail the findings of the Master and entered a final order on June 26, 1963, dismissing the complaint. The rule is well established in this state that when the findings of the Master, who heard the testimony is confirmed by the trial court, such findings will not be disturbed unless they are manifestly against the weight of the evidence. Strilky v. Levy, 33 Ill App2d 91, 178 NE2d 694; People v. LaSalle St. Trust & Sav. Bank, 5 Ill App2d 261, 125 NE2d 654.

In view of all of the evidence adduced at the hearing before the Master in this cause and the circumstances surrounding the transaction in question and the indebtedness involved and economic conditions existing at the time of the transfer, we are of the opinion that the trial court properly found that the defendant dealt fairly with the plaintiff, did not take any advantage of him and committed no fraud upon him by taking title to his undivided one-half interest in the property in question.

The decree of the trial court dismissing the complaint for want of equity is affirmed.

Affirmed.

DOVE, P. J. and REYNOLDS, J., concur.