EMMA GALLER, Individually, as Trustee, and as Ex'rx of the Last Will and Testament of Benjamin A. Galler, Deceased, Plaintiff-Appellant, v. ROSE GALLER et al., Individually, and as Ex'rx of the Estate of Isadore A. Galler, Deceased, Defendants-Appellees.

(No. 58639;

First District (5th Division)—June 21, 1974.

*Modified upon denial of rehearing September 6, 1974.*

Arvey, Hodes and Mantynband, of Chicago (Sidney R. Zatz and Jack H. Oppenheim, of counsel), for appellant.

Mayer, Brown & Platt, of Chicago (Patrick W. O'Brien and Thomas N. Jersild, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court as modified upon denial of petition for rehearing:

Plaintiff appeals from a finding that Isadore Galler's estate need not account to the Galler Drug Company for salaries he received during the years 1958 to February, 1965. Defendants cross-appeal from the order requiring Aaron Galler to account to the company for his increased salary paid from September, 1957, to December, 1965. Plaintiff contends that Isadore's $42,000 annual salary paid each year following Benjamin Galler's death in December, 1957, was not authorized and was excessive compensation for his services to the company. Defendants contend that Aaron's salary, although increased without authority from $15,000 to

$20,000 during the years 1956 thru 1965, was nevertheless, the fair market value for his services to the company for that period. Also in dispute is whether interest should be assessed on any monies ordered to be repaid.

The background to this appeal can be briefly stated. In March, 1954, Benjamin and Isadore Galler, founders and shareholders of 95 percent of the issued and outstanding shares in the Galler Drug Company, conceived of a shareholders' agreement to assure their immediate families of financial protection and to provide for equal control in the corporation upon their death. The agreement was signed in July, 1955, by plaintiff and her husband Benjamin, and defendant Rose Galler and her husband Isadore. Although Benjamin was seriously ill throughout most of 1955 and, in fact, never returned to his corporate duties, he nevertheless continued to receive a $42,000 annual salary until his death in December, 1957. Isadore was also receiving $42,000 annually almost until his death in 1965. Isadore's son Aaron was employed by the company mainly as the supervisor of its warehouse. In September, 1956, Aaron was appointed president of the company for a term of 1 year and he increased his salary to $20,000. Plaintiff filed suit when, after Benjamin's death in December, 1957, Isadore and Aaron excluded her from the operation of the business and refused to honor the 1955 shareholders' agreement.

An order for specific performance and accounting was entered by the trial court in 1962. The appellate court in 1964 reversed the order for specific performance, affirmed in part the order for accounting and modified the order awarding master's fees. (45 Ill.App.2d 452, 196 N.E.2d 5.) The supreme court reversed the appellate court's orders with respect to specific performance and accounting, affirmed the finding that the master's fees were excessive, and upheld the trial court's order. (32 Ill. 2d 16, 203 N.E.2d 577.) The action was remanded for the accounting proceedings.

A deadlock of the directors over salaries to be received after 1965 was adjudicated in an earlier appeal. 95 Ill.App.2d 340, 238 N.E.2d 274.

The present dispute involves Isadore's and Aaron's salaries prior to February 11, 1965, when the supreme court's order became effective. The accounting period in question for Aaron begins on September 25, 1956, when he increased his salary from $15,000 to $20,000. The accounting period in question for Isadore begins after Benjamin's death in December, 1957, when Isadore continued to receive $42,000 annually. The supreme court's directive to the trial court with respect to these issues was twofold. First, Isadore and Aaron were required to "account for all monies received by them from the company since September 25, 1956, in excess of that theretofore authorized." Secondly, the supreme court affirmed

the trial court's 1962 decree that Isadore and Aaron be allowed "fair compensation to be determined by the [trial] court, for services rendered by them to the corporation during said period, with the burden upon them to prove the fair market value of any such services."

On remand, a hearing was held before a master to determine these issues. In January, 1971, he issued his report finding that neither Isadore's $42,000 salary nor Aaron's $20,000 salary was authorized by either informal arrangement or by "proper directors" for the periods in question. He further determined that the fair market value of Isadore's and Aaron's annual services to the corporation for the periods in question was $10,000 and $15,000 respectively. The master, therefore, recommended that Isadore's estate repay the Company $226,666 plus interest and Aaron repay $41,666 plus interest.

The trial judge filed a memorandum opinion and entered orders on November 14, 1972, wherein he overruled the master's finding as to Isadore and adopted the finding as to Aaron, but without interest. Plaintiff and defendants have both appealed from those orders.

OPINION

Plaintiff challenges the trial court's finding that Isadore properly drew a $42,000 annual salary from the date of Benjamin's death until February 11, 1965. She argues that: (1) the salary was not authorized by "proper directors" nor by an informal agreement between Benjamin and Isadore; and (2) the salary was grossly in excess of the fair market value for the services Isadore rendered during this period.

Defendants do not maintain that "proper directors" authorized Isadore's $42,000 salary. Rather, they narrow the issue to whether Isadore was authorized to receive this salary after the death of Benjamin by reason of the informal agreement existing prior to Benjamin's death whereby both brothers took equal salaries of $42,000 annually. The supreme court in this very case determined that formal corporate meetings are not necessary to authorize officers' salaries in a closely held corporation. Nevertheless, the record does not support defendants' contention that the brothers' informal agreement in effect prior to Benjamin's death in December, 1957, was even an informal authorization for Isadore to receive $42,000 annually after the death of Benjamin without any corresponding payment to a member of the Benjamin Galler family. On the contrary, the evidence indicates that Isadore's salary during the 7 years in question here violated (1) the brothers' previous relationship, and (2) the clear import of the 1955 agreement.

The brothers' previous relationship was a close association. From 1919 to 1924 Benjamin and Isadore were equal partners in the Galler Drug Company. In 1924 the business was incorporated under the Illinois

Business Corporation Act with each brother owning one-half of the outstanding 220 shares. They continued to operate the business as though partners, receiving equal salaries by mutual assent rather than by formal corporate authorization. Benjamin's continued receipt, as corporate president, of $42,000 annual salary from February, 1955, until his death in December, 1957, even though he was unable to perform his corporate duties during this period, is further evidence of this intent. A fundamental limitation in this arrangement is that upon the death of either brother, the element of mutual assent is necessarily lacking, and the survivor, without manifestly clear contrary evidence, is prevented from acting or benefiting unilaterally. Isadore's continued receipt of the same salary upon the death of Benjamin without the *quid pro quo* for his brother's family, is an alteration of the past arrangement, and was without authorization.

Furthermore, the clear import of the 1955 shareholders' agreement is that the partnership-like arrangement was intended to remain after the death of either Benjamin or Isadore. While not specifically addressing itself to salaries, the agreement provides that upon the death of either Benjamin or Isadore, four directors are to be elected; two from Isadore's family and two from Benjamin's family. The officers and their salaries are voted upon by the directors. Dividends are required to be paid provided $500,000 earned surplus is maintained. It may be inferred that this agreement sought to replace a deceased brother's position as an officer with members of his family, thereby permitting them to share equally in the company's earnings, including salaries, a significant means of distributing the corporate profits. This inference is not negated by the fact that no provision in the 1955 agreement requires equality of salaries between the family branches.

■■ The effect of defendants' refusal to implement the 1955 shareholders' agreement highlights the fact that there could not have been any authorization for Isadore's salary after December, 1957. This effect can best be observed by comparing the 7 years in question here with the period subsequent to 1965. In 1965, as a result of the supreme court's opinion, the shareholders held an election and each family elected two directors who in turn elected two officers. Aaron Galler and Emanuel Galler, as president and treasurer, respectively, represented the Isadore Galler family, and Emma Galler and her son Gerald, as secretary and vice-president respectively, represented the Benjamin Galler family. The officers' salaries amounted to $37,500 for each family, which, had this sum been paid after Benjamin's death, would have provided each family with a salary income aggregating $262,500 for the 7-year period. Instead, Isadore's family received $434,000 in salaries during the same period

while Benjamin's family received no salary income. We find such a result violated the spirit and the mandate of the 1955 agreement and belies defendants' claim that Benjamin's and Isadore's informal agreement was an authorization for Isadore alone to receive future salaries of $42,000 annually after Benjamin's death.

Defendants maintain that the question of Isadore's authorization with respect to salaries he received during the 7-year period in question has, in effect, been answered by the supreme court. The supreme court's opinion, modified upon defendant's petition for rehearing, limited defendants' accounting to monies "in excess of that theretofore [September 25, 1956] authorized." Defendants take the simplistic position that all this court should do is determine what salaries were authorized prior to September 25, 1956. Since Isadore received $42,000 prior to that date, defendants argue that a continuation of the same salary after that date had been "theretofore authorized." We disagree. The supreme court's directive, in our view, required not only a determination that there was a previous authorization, but also the extent thereof. The prior authorization must be considered in the context of Isadore's and Benjamin's arrangement of sharing monies equally. Benjamin's death in December, 1957, altered this arrangement and terminated the authorization.

Defendants alternatively argue that the supreme court did not intend that Isadore account for the salaries he received prior to 1965. They note that the supreme court's opinion approves of the appellate court's finding that only Aaron need account. The specific language states, "the questions as to salary which the Appellate Court held were improperly increased became one of fact to be determined by the trial court." (32 Ill.2d at 34.) Defendants infer from the singular use of "salary" in the quoted language and the fact that the appellate court found Isadore's salary proper that the supreme court viewed Isadore's salary as authorized. We find the quoted language too ambiguous to draw such an inference. First, the verb in that sentence ("were * * * increased") is plural and therefore cannot be reconciled with the singular subject. Secondly, the judgment of the appellate court, except as it related to master's fees, was "reversed, set aside and wholly for nothing esteemed" by the supreme court's order. Finally, the record before this court affords us the opportunity to draw contrary inferences. For example, defendant's petition for rehearing in the supreme court stated that the "Salaries drawn by Isadore and Aaron prior to the September, 1956 meeting [$42,000 and $15,000 respectively] had been authorized at previous meetings to which no objection has been made." Defendants concluded that "Under these circumstances, any accounting order other than an order directing Aaron to account for salaries received in excess of $15,000,

is not justified." The supreme court, however, did not agree with this conclusion thus arguably creating the opposite inference. In any event, we are not prepared to adopt either inference.

Plaintiff further contends that Isadore's $42,000 salary was excessive compensation for the services he performed during the 7-year-period in question. The parties agree that under the 1962 trial court's decree as affirmed by the supreme court, Isadore is entitled to receive the fair market value of his services. The disagreement is over the evaluation of those services. The master, after hearing evidence, found that the value of Isadore's services was not in excess of $10,000 annually. The trial judge in his memorandum opinion overruled the master and found that Isadore's $42,000 salary was justified on two bases: (1) that salaries which were reasonable prior to the death of Benjamin Galler do not become unreasonable upon his death; and (2) that services performed in a closely held corporation cannot be measured on a scale with the open labor market and that it is therefore "not unusual to pay an elderly founder of a business, who through many years helped to build the enterprise, a salary far in excess of his services to the business entity."

The two justifications relied on by the trial judge are not relevant to a determination of the fair market value of Isadore's services to the company. The $42,000 salary taken in conjunction with the 1955 close corporation agreement between the two living and mutually consenting parties, does not necessarily represent the fair market value of the parties' services. It certainly then can have no bearing on the fair market value of a party's services in later years when there no longer is mutual assent. Also, the fact that Isadore was founder of this close corporation does not inure to his benefit and cannot be considered in the determination of his fair market value to the company.

The relevant inquiry of this court is whether the work Isadore and Aaron performed during their illegal control benefited the company. The record indicates that in 1958, Isadore was 73 years old, that he worked 6 days a week, 12 hours a day and that he worked almost up to his death in 1965 at the age of 80. Due to his advanced age he was spared much of the strenuous work and what work he did perform was clerical in nature. Most of the responsibilities that he had undertaken in developing the business were now performed by others.

■■ The master found that the fair market value of Isadore's services to the company did not exceed $10,000 annually. This determination was overruled by the trial judge. In *Meyer v. Levy*, 249 Ill.App. 408, 420, the court stated:

> "The record discloses that the master heard the testimony of all the witnesses, which the chancellor did not, and therefore the

master was better able, than are we or the chancellor, to determine the credibility of the testimony of the several witnesses, and where such testimony was in dispute the master was better able to judge as to which witnesses were more worthy of credit and to give credit accordingly. The chancellor and this court have but the cold and unresponsive record upon which to come to a conclusion as to the credibility of the several witnesses, and a chancellor as well as a court of review should be slow in disturbing the conclusions of the master upon the facts, unless it can be said that the master's conclusions were clearly contrary to the probative force of the evidence."

On the whole, the record supports the master's determination. Accordingly, we hold that Isadore's estate must account to the Galler Drug Company for $226,666 in salaries he received for the years 1958 to 1965.

We now direct our attention to defendants' cross appeal of the order requiring Aaron to account for $5,000 per year in increased salary taken between September 25, 1956, and February 11, 1965. Defendants do not dispute that there was no specific authority for Aaron's $20,000 salary, but argue that such sum and not $15,000 per year was fair compensation for services rendered to the corporation. The trial judge only determined that the salary was unauthorized. The master, however, found that Aaron's services were worth $15,000 per year.

The rule is well established in Illinois that when the finding of the master who heard the testimony is confirmed by the trial court, such finding will not be disturbed unless it is against the manifest weight of the evidence. *Tarpoff v. Karandjeff*, 51 Ill.App.2d 454, 201 N.E.2d 549; *Franklin County Building Ass'n v. Smith*, 260 Ill.App. 315.

In the petition for rehearing defendant Aaron emphasizes the uncontradicted testimony he gave. However, we believe, as did the master, that it was self-serving, not corroborated by any officer or employee of defendant and incapable of being contradicted by plaintiff who was excluded from the place of business.

■■ The record discloses that prior to September 25, 1956, Aaron earned $15,000 per annum in his principal job as supervisor of the warehouse. After becoming president, he performed a variety of duties, few of an executive nature. The key executive positions of sales manager, credit manager and general manager continued to be operated by long-time employees. These men earned approximately $17,000 annually. Aaron testified that he supervised the decisions made by these management people. Comparing the apparent expertise of these employees with Aaron's past experience, we find his self-serving testimony somewhat

unlikely. It is noteworthy that neither these management people nor any other employees were called to substantiate Aaron's claim to exercising such executive functions. With the limited exception of one bank officer, Aaron's testimony regarding his value and service to the company is markedly lacking in corroboration.

Defendants have argued that the uncontroverted evidence points to the fact that defendants presented four witnesses while plaintiff called on one. We agree with the master's response to the same argument wherein he noted:

> "But the evidence is undisputed that Emma Galler was physically excluded from the premises of the Galler Drug Company during the entire period for which the accounting was ordered, while the heads of departments retained their lucrative positions and were beholden to Aaron and Isadore for the continuation of their jobs. Accordingly, no witnesses upon whom she could rely were available to her. * * * There was no burden on Emma Galler to make any proof in the accounting, and, as stated above, the burden of proof which was on defendants to justify the monies taken by them, was not sustained."

We, therefore, conclude that the finding of the master, confirmed by the trial court, was not against the manifest weight of the evidence. Aaron must account to the Galler Drug Company for $41,666 in increased salaries for the period in question.

■■ The only remaining issue is whether Isadore's estate and Aaron should pay interest on these monies. A court of equity assesses interest when warranted by equitable considerations. (*McKey v. McCoid*, 298 Ill. 566, 132 N.E. 233; *Groome v. Freyn Engineering Co.*, 374 Ill. 113, 28 N.E.2d 274.) Neither the master's report recommending interest nor the trial judge's memorandum opinion and order disallowing interest expressed reasons which governed their decisions. Our view is that the dispute over salaries is a by-product of Isadore's and Aaron's actions in violating the 1955 agreement—actions that the supreme court characterized as "clearly inequitable"—and, as such, warrants assessing defendants interest.

Accordingly, the order of the circuit court requiring Aaron Galler to account to the Galler Drug Company for the sum of $5,000 per annum for each of the years, and the prorated fractions of years from September 25, 1956, through February 11, 1965, or $41,666, is affirmed as modified and remanded with directions to assess interest. The order finding that Isadore Galler had satisfied the judgment of the supreme court directing him to account is reversed and the cause is remanded with

directions to enter an order requiring the Isadore Galler estate to repay the Galler Drug Company $226,666 plus interest.

Affirmed as modified as to Aaron Galler and remanded with directions; reversed and remanded with directions as to Isadore Galler's estate.

SULLIVAN, P. J., and DRUCKER, J., concur.